# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CITY OF NORFOLK v. JAMES N. BELL, CITY AUDITOR, ET ALS.

### March 1, 1928.

1. TAXATION—*Assessors—Commencing Work Before the Beginning of the Assessment Year—Case at Bar.*—The instant case was a suit to enjoin payment of sums allowed tax assessors by ordinance as additional compensation for their assessment of property in the year 1925. The Constitution of 1902, section 171, provides for a reassessment of real estate in the year 1905 and every fifth year thereafter. It follows that the actual assessment in the instant case was to be in the year 1925. But by section 2233 of the Code of 1919, it is provided that the courts "on or before the 1st day of January" of the assessment year should appoint the necessary assessors, and section 2244 of the Code of 1919 provides that the assessors shall, immediately after their appointment, proceed to examine all lands, etc., and assess the fair market value thereof.

   *Held:* That this constituted legislative authority for the commencement of work by the assessors before the beginning of the assessment year. The examination may begin before the assessment year commences, although the actual assessment must be made within the year itself.

2. TAXATION—*Assessors—Beginning Work Before the Beginning of the Assessment Year—Constitutionality of Section 2244 of the Code of 1919.*—Section 2244 of the Code of 1919, providing that tax assessors shall, immediately after their appointment, proceed to examine and assess all lands within their respective counties, districts and corporations, is constitutional.

3. STATUTES—*Constitutionality—Presumption in Favor of Constitutionality.*—A statute is not to be declared unconstitutional unless it is absolutely necessary.

4. TAXATION—*"Immediately"—Assessors to Proceed in Their Examination Immediately After Their Appointment—Case at Bar.*—The word "immediately" in section 2244 of the Code of 1919, providing that the assessors shall immediately after their appointment proceed to examine all lands and lots, etc., is to be construed in the light of the circumstances in which it is used. It must mean something different from the "1st of January" of the assessment year or the legislature would have said that work should begin on that day. And

this provision of the statute is not changed by the fact that the order of appointment of the assessors in question provided that they "should enter upon their duties on January 1, 1925."

5. TAXATION—*Assessors—Additional Compensation—Compensation for Work Before the Assessment Year—Practical Construction of Statute—Auditor Paying Per Diem for Services Rendered Before January 1st of the Assessment Year—Case at Bar.*—The instant case was a proceeding to enjoin the payment of additional compensation to tax assessors for work done before the beginning of the assessment year. The Code of 1919, section 2250, provides for a per diem payment to be paid in part by the State and in part by the counties or corporations. This compensation could not begin to run until they went into office. The assessors in the instant case were appointed and qualified in September, 1924. The Auditor of Public Accounts paid to these assessors their per diem for services rendered before January 1, 1925. These payments were approved by complainant city and its counsel.

*Held:* That this constituted a practical construction of section 2250 of the Code of 1919.

6. STATUTES—*Practical Construction—Weight Attached to Practical Construction.*—The practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction.

7. TAXATION—*Assessors—Beginning of Term of Assessors—Case at Bar.*—In the instant case, a suit by a city to enjoin the payment of additional compensation to tax assessors for work done before the beginning of the assessment year, complainant insisted that the term of office of the assessors began on January 1st of the assessment year. But the statute (chapter 95 of the Code of 1919) does not say so, and the constitutional provision (Constitution of 1920, section 171) merely provides when the actual assessment must be made. The term of office of the assessors in the instant case ran from the date of their qualification and the per diem compensation claimed was for work done after that date.

8. PUBLIC OFFICERS—*Term of Office—Extension of Term.*—The law does not favor an extension of the term of a public officer in ambiguous cases.

9. TAXATION—*Assessors—When Term of Office Ends.*—Naturally it would be supposed that the term of office of a tax assessor would end when the assessment is completed and the books returned, but from a fair construction of the Code provisions (sections 2248 of the Code

of 1919 and 2392, Code of 1924) it would seem that the term of the assessor's office is necessarily extended beyond the assessment year.

10. TAXATION—*Assessors—Compensation—Pay to be on a Per Diem Basis—Case at Bar.*—From section 2250 of the Code of 1924 it appears that the pay of assessors must be on a per diem basis. Neither the State nor the cities have power to give any other compensation, although the cities have power to pay in a gross sum or sums as was done in the instant case. The cities can make no payment on account of any day for which the State was not in part liable.

11. TAXATION—*Assessors—Compensation—After the First of December.*—Throughout all the statutes runs this clear purpose that the pay of assessors for each day's work was to be divided between the State and the city, but the legislature did not undertake to limit the proportion of such payments. The sum to be paid by the State is fixed, that to be paid by the city changes at the city's will. The State pays nothing after the books are turned in and pays nothing at all if this is not done within the appointed time. Since the State in no event pays for time after the first of December, the cities cannot. It follows that compensation ceases on that date even though the assessors do not then go out of office.

12. TAXATION—*Assessors—Compensation—Additional Compensation by City.*—It is left to a city council to pay additional compensation to tax assessors when and as it sees fit. This may very well be put off till the work had been completed and value known, and there is no good reason why a sum fixed may not be afterwards increased if it prove to be inadequate. All of this is left to the council in language as comprehensive as it could well be framed.

13. TAXATION—*Assessors—Compensation—Additional Compensation by City—Where Council has Once Acted—Case at Bar.*—In the instant case, a suit to enjoin the payment of additional compensation to city tax assessors, the council by ordinance of January 20, 1925, fixed the compensation of the assessors, and on application by the assessors for additional pay by ordinance of April 6, 1926, granted additional compensation. It was claimed by the city that the council having once acted its power was exhausted and that it could not grant the additional compensation.

*Held:* That there was nothing in this contention. All that was done was to allow an increase of pay where the pay was ascertained to be insufficient.

14. TAXATION—*Assessors—Compensation—Additional Compensation by City—Work of Assessors Before and After the Assessment Year—Case at Bar.*—In the instant case, a suit to enjoin the payment of additional compensation to city tax assessors, the council by ordinance of January 20, 1925, fixed the compensation of the assessors, and on application by the assessors for additional pay by ordinance of April 6, 1926,

granted additional compensation. The ordinance of January 20, 1925, did not purport to do anything but fix the compensation for the work to be done in that year, while that of April 6, 1926, on its face gave pay for work done in 1924, from September to January 1, 1925, and from December 1, 1925, to March 1, 1926, periods, with the exception of December, 1925, for which no compensation had been given at all.

*Held:* That the additional allowance for work done in 1924 was valid, but that the allowance for December 1, 1925, to March 9, 1926, was invalid.

15. TAXATION—*Assessors—Automobile Hire.*—A city may hire an automobile, or it might buy one for use of tax assessors, therefore an allowance of a certain sum to an assessor by the city council for the use of his automobile is valid and should be paid.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for defendant. Complainant appeals.

*Modified and affirmed.*

The opinion states the case.

*R. W. Peatross* and *D. Todd Wool,* for the appellant.

*James E. Heath, N. T. Green* and *Geo. Read Martin,* for the appellee.

HOLT, J., delivered the opinion of the court.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for defendants. Plaintiff appeals.

By an order entered in the Corporation Court of the city of Norfolk on September 12, 1924, W. D. Southall, Robert VanDenbergh, W. E. Dear, W. Ludell Baldwin, S. A. Woodward and Edgar L. White were appointed assessors to "assess the value of lands and lots, together with the improvements thereon, within the corporation of the city of Norfolk." Woodward, Dear, Baldwin and White qualified on September 22nd. VanDen-

bergh on September 23rd and Southall on September 25th, and immediately entered upon the discharge of their duties.

Relative to their compensation to be paid by the city, the city council on January 20, 1925, adopted the following ordinance:

"Be it ordained by the council of the city of Norfolk:

"Section 1. That the pay of the assessors appointed by the Corporation Court of the city of Norfolk, Virginia, for the assessment of real estate in the city of Norfolk during the year 1925, be fixed as follows:

"Six Assessors at $5,000.00 each, $30,000.00, payable in equal semi-monthly installments as the salaries of other officers of the city are paid.

"Section 2. That the said board of assessors be and they are hereby directed, for the compensation hereinabove provided, to assess all city owned real estate, all non-taxable real estate, and all the real estate of public service corporations within the city of Norfolk.

"Section 3. That the rates of pay provided for herein are subject to the following conditions:

"First. That all notes, books, papers, and any other data that may be used by the assessors in the work of the re-assessment shall be the property of the city of Norfolk, and upon completion of the work shall be deposited in the office of the commissioner of revenue, where it shall be subject to public inspection.

"Second. That the assessors shall make monthly reports to the city manager showing the progress of the work.

"Section 4. That this ordinance, being an emergency ordinance, shall be in force from and after its adoption."

Due to the magnitude of the work, it soon became apparent that it would be necessary to extend the time

for its completion, and on May 13, 1925, this time was extended by the corporation court of that city to December 1, 1925, that being the extreme limit of extension allowed by statute. The assessors were unable to complete their work by that date and did not complete it until February 13, 1926. Their final report was filed on March 8, 1926. In it they ask that each assessor be allowed as additional pay $2,450.00. Responding to this request, the city council, on April 6, 1926, adopted the following ordinance:

"Whereas, on the 12th day of September, 1924, the Corporation Court of the city of Norfolk appointed W. D. Southall, Robert VanDenbergh, E. L. White, W. Ludwell Baldwin, S. A. Woodward, and W. E. Dear, as assessors to assess the value of all lands and lots, together with improvements thereon, within this city, and on September 25, 23 and 22, 1924, they qualified as such before said court and entered upon their duties as assessors; and

"Whereas, on the 20th day of January, 1925, an ordinance was adopted by the council fixing the pay of each of the assessors at $5,000.00 for the year 1925; but at the time said ordinance was adopted it was distinctly understood that it was not to be final and conclusive as to the full pay of Messrs. Southall and VanDenbergh, and that the question of further pay to each of them was reserved for further consideration and action after the work was accomplished; and

"Whereas all of said assessors rendered valuable services to the city of Norfolk from the date of their qualification in September, 1924, to January 1, 1925, and from December 1, 1925, to March 9, 1926, when they rendered their final report to the council, for which they have not yet received any compensation whatsoever.

"And whereas the said W. Ludwell Baldwin furnished to the city, while said assessment was being made, the use of his automobile at an expense to himself of $800.00, for which no compensation has been made to him, therefore:

"Be it ordained by the council of the city of Norfolk:

"Section 1. That W. D. Southall and Robert Van-Denbergh do each receive from the city of Norfolk the further sum of $2,500.00 for his services in this behalf, payable at once by the treasurer of the city.

"Section 2. That E. L. White, W. Ludwell Baldwin, S. A. Woodward, and W. E. Dear do each receive from the city of Norfolk the further sum of $1,700.00 for his services in this behalf, payable at once by the treasurer of the city.

"Section 3. That, if after the said payments have been made, there should remain any balance of the fund appropriated for the said assessment, the treasurer of the city is directed to pay out of said balance the sum of $800.00 to the said W. Ludwell Baldwin as compensation for the use of said automobile, or, if said balance should not equal $800.00, then the whole thereof to the said W. Ludwell Baldwin for the purpose aforesaid."

It is to enjoin the payment of the sum so allowed that this suit is brought. Dear, Baldwin, Woodward and White answered and demurred. VanDenbergh and Southall each filed separate demurrers. Evidence was taken and the cause came on to be heard both upon the demurrers and upon its merit. The court, after striking out certain evidence as incompetent, sustain the demurrers and dismissed the bill.

In the petition for appeal is this statement:

"This case was fully matured in the court below. Answers were filed, depositions were taken, and the

whole record is here before the court. This court
should, therefore, pursuant to section 6365 of the Code,
enter a final decree on the merits and not remand
the case to the lower court."

The Constitution of Virginia, section 171, provides:

[1-4] "The General Assembly shall provide for a
reassessment of real estate in the year 1905 and every
fifth year thereafter."

It follows that the actual assessment in this case had
to be made "in the year" 1925, but the legislature in
recognition of the fact that certain preliminary work
might at times be necessary provided that the courts
should "on or before the 1st day of January" of the
assessment year appoint the necessary assessors, Code,
section 2233, and in section 2244, it said that "the
assessors shall, immediately after their appointment,
proceed to examine all lands and lots assessable by
them, with the improvements thereon, within their
respective counties, districts and corporations, and
shall, upon examination, ascertain and assess the fair
market value thereof."

Unless this statute is unconstitutional we have legis-
lative authority for the commencement of work before
the beginning of the assessment year.

Under familiar rules, a statute is not to be declared
unconstitutional unless it is absolutely necessary, and
so we reach the conclusion that the examination might
begin before the assessment year commenced, although
the actual assessment had to be made within the year
itself. The assessors are to begin work "immediately"
after their appointment. This word is to be construed
in the light of the circumstances in which it is used.
2 Words and Phrases (2nd Series) page 947. What-
ever it means, it must be something different from the
"1st of January" or the legislature would have said

the work should begin on that day. This provision of the general law is not changed by the fact that the order of appointment provided they, the "assessors, should enter upon their duties on January 1, 1925."

[5, 6] The Code, section 2250, provides for a per diem payment to be paid in part by the State and in part by the counties or corporations. Of course, this compensation would not begin to run until they went into office. That date must be certain when the per diem is allowed. It is interesting to note that the vigilant Auditor of Public Accounts has paid to these assessors this per diem for services rendered before January 1, 1925. These payments were approved by the plaintiff and by its able counsel, all of which they now say is wrong. It amounts to this: They said to the State "you and I must pay for each day's work done in 1924, and this account setting out your part of what is due is correct." What weight attaches to the acts of these public officials?

In *Smith* v. *Bryan, Mayor,* 100 Va. 199, 40 S. E. 652, the court said:

"It is a rule of construction that, if a statute is of doubtful import, a court will consider the construction put upon the act when it first came into operation, and that construction, after lapse of time, without change either by the legislature or judicial decision, will be regarded as the correct construction. Sutherland on Stat. Const. section 307; *Anable* v. *Commonwealth,* 24 Gratt. (65 Va.) 563, 566; *Lewis* v. *Whittle,* 77 Va. 415, 422; *Mangus* v. *McClelland,* 93 Va. 786, 789 [22 S. E. 364.]

"So also the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect

as a course of judicial decision. The legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction."

[7] Plaintiff earnestly insists that the term of office begins on January 1st of the assessment year. The statute does not say so, and the constitutional provision noted merely tells us when the actual assessment must be made.

We, therefore, reach the conclusion that the term of office of these assessors runs from the date of their qualification, and the per diem compensation is for work done after that date.

[8, 9] When does the term of office end? Unless there is some statute to show another purpose, we would naturally expect it would end when the assessment is completed and the books returned. The law does not favor an extension in ambiguous cases. *Smith v. Bryan, Mayor, supra.*

But the Code provisions fairly construed seem to indicate that this is not true. Section 2248 provides for correction at any time prior to the 1st of February of the second year after the assessment, but it must be on notice to the assessor, and section 2249 directs the clerk to certify any changes so made to the "proper assessor" or commissioner of revenue that he may make the corresponding correction in the book filed in the clerk's office.

Section 2392-a is in part as follows: "Any officer charged by law with the duty of assessing taxes or levies upon land or other property, money, income or license, or any officer upon whose report such assessment is made, shall, if he is satisfied that any such assessment is erroneous and that the error was caused

by his mistake, within one year from the 1st day of September of the year in which such assessment is made apply to the court in which such assessing officer gave bond and qualified or to whose clerk such bond and certificate of his qualification were returned, for the correction of such erroneous assessment." No one in his private capacity could do this, and when the assessor does it he must do it by virtue of his office, the term of which is necessarily extended beyond the assessment year—in this case until it was abolished by an act of the General Assembly approved March 25, 1926 (Acts 1926, chapter 526), and which became effective ninety days thereafter.

Although the office was not abolished, no provision for compensation is made, and the right to a per diem allowance ceases when the assessment books are returned.

In 1884 Session Acts, page 113, the legislature made comprehensive provisions for the assessment of real estate for the year following and for every fifth year thereafter. By this statute the assessors were allowed $2.00 a day to be paid wholly out of the State treasury. This statute was carried into the Code of 1887 as section 446. It was amended in 1910, Session Acts, page 69. The ordinary compensation remained at $2.00 a day, but the counties were allowed to increase such per diem by an amount not less than one nor more than three dollars a day to be paid out of the county funds, and it was said: "Nothing in this act shall be construed as limiting the right of the councils of the several cities to increase such per diem to the assessors or assistant assessors of said cities out of the funds of said cities." It may fairly be claimed that this amounts to an indirect expression of opinion on the part of the legislature that there was a then existing right in the cities to make such payments under the general law.

This section was again amended in 1915 (chapter 100). Compensation was increased to $4.00 a day, $2.00 to be paid by the State "and the other half of the same shall be paid out of the treasuries of the cities and counties for which said assessors and assistant assessors were appointed, provided, however, that the councils of the several cities shall have the right to further increase the per diem salary to the assessors and assistant assessors of the said several cities to be paid out of the fund of said cities."

In the Code of 1919, section 446 of the Code of 1887 appeared as section 2250, and the inaccurate use of the term "the other half" remained.

In the Acts of 1920, page 68, appears a further amendment. The minimum compensation was raised to $6.00 a day. Of this $3.00 was to be paid by the State and—not the other half—but the residue by the counties and cities. As amended both the supervisors of the counties and the councils of cities were given the right to increase the compensation of assessors and the statute which governs the case in judgment says "that the councils of the several cities and the board of supervisors of the several counties shall have the right further to increase the per diem salary to the assessors and assistant assessors of the said several cities and said several counties to be paid out of the funds of said city and said county."

[10, 11] From this it appears necessary that the pay be on a per diem basis. Neither the State nor the cities have power to give any other compensation, although the cities have power to pay in a gross sum or sums as was done in this case. But the proposition to be remembered after all is that it is on a per diem basis, and it is entirely clear that the cities can make no payment on account of any day for which the State was

not in part liable.   Throughout all the statutes runs this clear purpose.   The pay for each day's work was to be divided between the State and the city, but the legislature did not undertake to limit the proportion of such payments.   The sum to be paid by the State is fixed, that to be paid by the city changes at the city's will.

The State pays nothing after the books are turned in and pays nothing at all if this is not done within the appointed time.   Since the State in no event pays for time after the first of December, the cities cannot. It follows that compensation ceases on that date even though the assessors do not then go out of office.

[12] We are not here dealing with an officer who undertakes to discharge the duties of an office where the salary has been fixed.   It was left with the city council to pay additional compensation when and as it saw fit.   This might very well have been put off till the work had been completed and value known, and there was no good reason why a sum fixed might not be afterwards increased if it proved to be inadequate. All of this was left to the council in language as comprehensive as it could well be framed.

[13] But it is said that when the council had once acted its power was exhausted and in support of this *Kirkham* v. *Russell*, 76 Va. 956 is cited.   This was a case in which the council was authorized to elect certain officers.   This it did, and then that particular council undertook while these officers were still in office to elect their successors.   The court said this could not be done but that their successors had to be elected by the succeeding council, that if this could be done there was no limit to the future into which such power might be projected.   All that was done here was to allow an increase of pay, not stated, and ascertained to be

insufficient.    It was natural for competent men to
require some assurance before undertaking the work,
but neither they nor the council could at that time do
more than guess at what would be fair.    That was done
and when the work was finished the city undertook to
pay what seemed to it to be a just and proper sum.
When $5,000.00 was suggested as fair additional pay,
some of the assessors flatly declined to go on with the
work and were told by members of the council in
informal conferences that such additional payments
would be made as seemed right and proper.    Of course
this did not bind the city, but it does show that we are
dealing with no salary grab, all of this was in the open.

[14, 15] Even if the principle contended for was
established by *Kirkham* v. *Russell* it could not affect
the results in this case.    That is not the issue before us.
The ordinance of January 20, 1925, does not purport
to do anything but fix the compensation for work to be
done in that year, while that of April 6, 1926, on its face
gives pay for that done in 1924 from September to
January 1, 1925, and from December 1, 1925, to March
1, 1926, periods, with the exception of December,
1925, for which no compensation had been given at all.
We have already reached the conclusion that an allow-
ance can only be made for that done in 1924.    It also
appears from the record that these assessors were
required to do additional work for the city.    With this
we have nothing to do, for the payments sought to be
held up by this proceeding are for regular assessments
and not for other work.    Moreover these payments do
not purport to be for extra work.    Under the express
terms of the ordinance they are additional payments
to these gentlemen for work done by them as assessors,
the character of the compensation does not change,
only its amount is increased.    There is an item for

automobile hire provided for. This should be paid. The city might hire an automobile, or it might buy one, if it deemed such an act was for its own interest.

The issues have been dealt with on their merits rather than on demurrer. For example, the bill charges that work was begun on January 1, 1925. Manifestly if this were true, the city should not be made to pay for work done in 1924. The work, as we have seen, was commenced in September. That done in 1924 should be paid for. That done after December 1, 1925, for reasons stated, cannot be paid for, and so taking into account the allowances made and the time for which they were made and the proportion thereof for which the city is in fact liable, we find that there should be paid:

| | |
|---|---|
| To S. A. Woodward | $858.50 |
| To W. E. Dear | 858.50 |
| To W. Ludwell Baldwin | 858.50 |
| To Edgar L. White, Sr. | 858.50 |
| To Robert VanDenbergh | 1,256.43 |
| To W. D. Southall | 1,243.65 |

all of which sums bear interest from April 6, 1926, the date of the ordinance which allowed them. The decree appealed from will be modified to this extent and as modified affirmed.

*Modified and affirmed.*

CHRISTIAN, J., dissenting:

The assessment of the value of real estate every five years is a State function and the assessors are State officers whose duties, the manner and time of performance thereof, and their pay is fixed by statute.

The statute requires them after they have been furnished with the necessary papers by the clerk of the

court and Auditor of Public Accounts to go upon the land and lots and assess its fair market value as of January 1st of the assessment year, and return the assessment books in cities to the clerk's office not later than December 1st of that year. For which service they are to be paid six dollars for each day necessarily occupied in such assessment; one-half to be paid by the State and one-half by the counties and cities, but the counties and cities may increase this "per diem."

The assessors of the city of Norfolk were appointed "to enter upon their duties on January 1, 1925," and did not begin the performance of their duties until that day, though they had daily conferences about the assessment after September 23, 1924, for which they collected their *per diem*. The city council voted each of them, on January 20, 1925, five thousand dollars as additional *per diem* for the assessment of 1925, which was paid in semi-monthly installments.

The books which were required by statute to be filed on December 1, 1925, under penalty of forfeiture of all compensation, were not filed until February 13, 1926. Neither the court, council or auditor had any authority to condone or excuse this plain violation of the statute. Yet on April 6, 1926, the city council voted each of the six assessors several amounts of money for valuable services rendered "from the date of their qualification September, 1924, to March 9, 1926," aggregating $12,-600.00. These payments were enjoined by the city attorney.

The law, I take it, cannot be disputed that no additional compensation can be voted to assessors by the city council, except by virtue of section 2250 of the Virginia Code. The council could not vote any per diem until their term of office began, and they began

to perform their duties for which they were paid. Nor could they pay any per diem after December 1, 1925, because in direct violation of section 2247 of the Virginia Code.

I concur in the majority opinion refusing pay to the assessors from December 1, 1925, to March 9, 1926, but dissent from the opinion giving them compensation for *conferences* prior to the commencement of their term of office, or performance of any duties for which they were to receive a per diem.

The money was raised by taxation to be expended by the council as trustees of the people according to its charter, and the statute law of the State, and the same should be construed strictly. I believe the appropriation ordinance of April 6, 1926, is *ultra vires* and void, therefore should be perpetually enjoined by this court.