REQUESTED BY: William E. Peters, State Tax Commissioner, State Office Building, Lincoln, Nebraska.
Can the forfeiture provisions of section 77-1354, 1977 Supp., be invoked for failure of a county to revalue property prior to January 2, 1978?
No.
You have asked several questions about the interpretation of sections 77-1349 to 77-1354, 1977 Supp., which were sections 1 to 6 of LB 131. In attempting to answer them we would be forced to observe that the sections involved contain many areas of uncertainty, and that we were unable to answer your questions. We therefore deem it best to discuss the overall validity of these sections.
Section 77-1350 provides:
 "(1) Each county which has not implemented a revaluation plan shall revalue or implement the revaluation of all lands and improvements in such county on or before January 1, 1978, and each year thereafter.
 "(2) Each county assessor shall, on or before July 1, 1977, and each year thereafter on that date, notify the county board in writing of the assessor's plans for determining the county's values for the coming assessment year. Such notification shall contain such information as may be required by rules and regulations of the Tax Commissioner which shall include information regarding the level of values for all classes of taxable property."
Section 77-1351 requires the county board to review the statement of the assessor and on or before August 15, 1977, and each year thereafter, to send to the Tax Commissioner a copy of the assessor's plans, the opinion of the county board about them, and a report of the assessor's budget to accomplish his duties. Section 77-1352 requires the Tax Commissioner, on or before November 1, 1977, and each year thereafter, to notify the county board and assessor as to his opinion as to what must be done for the coming year's valuations to maintain the `property' level of values. Section77-1353 requires the Tax Commissioner to send copies of his recommendations to each member of the State Board of Equalization and Assessment, which shall, at its equalization meeting consider such information, together with his report of the extent of compliance and other relevant information.
Section 77-1354 requires the Tax Commissioner to notify the State Treasurer as to each county which does not revalue as required by section 77-1350. If the county has not revalued prior to January 2, 1978, ten percent of the money the county would be entitled to from the Personal Property Tax Relief Fund shall be forfeited to the state. This percentage increases to twenty percent in 1979, and fifty percent in 1980 and succeeding years.
This bill was originally introduced with the emergency clause. However, before final passage the emergency clause was stricken. The bill therefore did not become effective until September 2, 1977. You will note that sections77-1350 and 77-1351 require actions to be taken in connection with formulation of plans for valuations for the upcoming years before the effective date of the act. Obviously, this cannot be done. Equally obviously, the Legislature considered the formulation of a plan by the assessor, the review of it by the county board, and the recommendations of the Tax Commissioner to be necessary preliminary steps to the revaluation of property.
The question is whether a court would permit a forfeiture to be enforced against a county for failing to revalue prior to January 1, 1978, when some of the preliminary steps toward such a revaluation, prescribed by statute, could not be taken. We conclude that it would not. The word `forfeit' has various meanings, some involving criminal law, and some contract law. A somewhat different use is involved in section 77-1354, and perhaps it might more aptly be said to provide for a penalty. In any event, all of the cases say that with respect to both forfeitures and penalties, legislation imposing them will not be enlarged by implication. See, 36 Am.Jur.2d 615, Forfeitures and Penalties § 8. We believe a court would refuse to impose a forfeiture or penalty for failure to take some action, the preliminary steps of which were to be taken before the effective date of the act. We therefore are of the opinion that the failure of the Legislature to enact this bill with the emergency clause precludes the implementation of the sanctions prescribed in section 77-1354 for failure of a county to revalue prior to January 2, 1978.
The foregoing discussion deals with the interpretation of the sections involved. There is, however, a more fundamental question, and that is whether these sections are sufficiently clear to be constitutionally valid. We believe there is serious doubt that they are. In Blue Flame GasAssociation v. McCook Public Power District, 186 Neb. 735,186 N.W.2d 498 (1971), the court held an act of the Legislature unconstitutional, on the ground that some of its provisions were so vague, general, and indefinite as to be incapable of practical application, and therefore arbitrary and unreasonable. We think the same result could be reached here.
The first area of uncertainty deals with the term `revaluation plan' and the words `revalue' and `implement.' Section 77-1350(1) deals with counties which have not `implemented a revaluation plan.' What does that mean? One's first reaction is to say that it means counties which have not had reappraisals of all lands and improvements as required by sections 77-1301.01 to 77-1301.08, R.R.S. 1943, or have not put such reappraisals into effect. We are left in doubt as to this interpretation, however, by the fact that the word `reappraisal' is used throughout sections77-1301.01 to 77-1301.08, and it is not used at all in sections 77-1349 to 77-1354. This casts considerable doubt that the same meaning is intended.
Our doubt is greatly heightened by the provision in section 77-1350 that counties shall `revalue' their lands and improvements on or before January 1, 1978, `and each year thereafter.' The Legislature may have intended that all counties should complete a reappraisal before January 1, 1978, but we refuse to credit it with an intention to require them to throw away the old appraisal each year, and conduct and put into effect a new one. We understand that it takes an appraisal firm from two to three years to make such a reappraisal, at a cost of a quite large sum of money. Obviously the Legislature did not intend to require such a reappraisal every year. This means that we cannot equate `revaluation' with `reappraisal.' Since `revaluation' has not been defined, we are completely in the dark as to what it means.
As a matter of fact, it can be argued that a county `revalues' its land and improvements every year, at its equalization session held pursuant to chapter 77, article 15. If that construction is given to the word, the statutes we are considering become meaningless, since they apply to no counties. Even if some other meaning is given to the word, it is difficult to say that they apply to any county, because there is no time limit since when they must have `revalued.' Surely every county must sometime since its creation have changed the valuations of its lands and improvements, and will argue that it cannot be said to have never implemented a revaluation plan.
We are also troubled with the word `implement.' We believe that it would probably be impossible to implement the revaluation of lands and improvements between the effective date of the act and January 1, 1978. If we assume that `revaluation' means `reappraisal,' a re-appraisal could have been accepted by a county and approved by the Tax Commissioner as provided in section 77-1301.01, R.R.S. 1943, between September 2, 1977 and January 1, 1978, but in our opinion, this would not be implementation. In general, before changes in the valuation of taxpayers' property can be made, due process requires notice and an opportunity to be heard. After a reappraisal has been approved, as we understand the procedure, the assessor sends out notices to the property owners before the following April 1, as required by section 77-1315, and the county board of equalization, at its meeting in April and May, held pursuant to section77-1502, changes the valuations of property pursuant to the reappraisal and such notices. In our opinion, only after the county board of equalization has done so, and the changed values are included in the abstract of assessments, has the re-appraisal been implemented.
This process could not take place between September 2, and January 1. First, it could not be done for the tax year of 1977, because the levy for that year was made before the effective date of the act, based upon the old valuations. A change of valuations could not be `implemented' for the tax year 1978 before January 1, 1978, even if the required notices were given and hearings held, because this would involve a determination of what values would be in the future, instead of what they were at some date in the past.
Property is assessed at its value as of January 1 of the tax year in question. If the county board of equalization were to make a determination on December 1, 1977, of the value of property on January 1, 1978, this would, in our opinion, be speculative, and of doubtful validity. City ofNorfolk v. Bell, 141 S.E. 844 (Va. 1928), involved assessors who were to assess the value of all real estate in the City of Norfolk, Virginia. They began their work before the beginning of the year. The court reached the conclusion that the examination of property might begin before the assessment year commenced, but that the actual assessment had to be made within the year itself. We believe the same is true in Nebraska, and that a final assessment of value for the tax year 1978 could not be made before January 1, 1978. For this reason, a January 1 deadline for implementation of a revaluation is a particularly inappropriate one.
Section 77-1350 does not make it clear whether all counties are to annually revalue their real estate, subject to the penalty provisions of section 77-1354, or only those which had not done so prior to the effective date of the bill. Subsection (1) applies only to those counties which had not implemented a revaluation plan. Those counties are required to revalue on or before January 1, 1978, and each year thereafter. Subsection (2) appears to apply to all counties, but that subsection, and following sections, seem to require only that plans be prepared and submitted to the Tax Commissioner. We find no specific requirement that counties not covered by subsection (1) revalue each year. Section 77-1354 applies the penalties only to those that do not revalue pursuant to section 77-1350. There may be unreasonable classification in this respect, or, in any event, a lack of clarity.
Section 77-1354 provides that varying percentages of `the money to which such county would be entitled under the Personal Property Tax Relief Fund' shall be forfeited to the state in the event of noncompliance with the law. Section77-202.30 requires money distributed to the counties from this fund to be distributed by the county treasurer pro rata to the taxing agencies in the county. You ask whether this percentage applies only to the county's share of this distribution, or to the entire sum remitted to the county treasurer for distribution.
Section 77-1354 would permit either interpretation, but an examination of the legislative debate on the bill shows that the question came up, and Senator DeCamp, the introducer of an amendment dealing with the penalty, made the statement that it was to apply to the money going to all taxing agencies, on the theory that school districts and other taxing agencies would then exert pressure on the county board to comply with the law. We therefore adopt that interpretation.
You also ask whether section 77-1354 provides sufficient standards by which the Tax Commissioner can determine whether a county has failed to comply with the law, and should incur the penalty. No standards at all are provided, nor does the act provide for a hearing for the county. We suppose a county could contend that its values were correct, and that no changes were indicated. The act gives it no opportunity to present that argument, nor any standards by which the Tax Commissioner can determine whether the argument is correct. Such standards are necessary for administrative action of this kind. Furthermore, if such action is taken by the Tax Commissioner without a hearing, there is probably a denial of due process.
Because of the deficiencies we have pointed out, it is very doubtful that the penalties specified by section77-1354 could be successfully imposed, particularly for failure to `revalue' prior to January 1, 1978.