(68 App. Div. 362.)

## TRAPP v. McCLELLAN.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

**1. Negligence—Proximate Cause—Question for Court.**

Where the facts of an accident are undisputed, the question of the proximate cause thereof is for the court.

**2. Personal Injury—Boatman—Proximate Cause.**

Plaintiff, a fireman on a fireboat, was injured while casting off lines from two coalboats belonging to defendant, which had tied to the fireboat. The line in which plaintiff's foot caught had an eye-splice in the end, and the same had been fastened to a cleat on the fireboat by defendant's employés, and could only be unfastened by persons on the fireboat, or the movement of the boat itself. When the accident happened the fireboat had started to answer an alarm. *Held*, that the fastening of the coalboat to the fireboat was not the proximate cause of the accident, no inherent danger being in the rope or eye-splice, but the proximate cause was the starting of the fireboat.

**8. Same—Defendant's Trespass—Effect.**

That the fastening of the coalboat to the fireboat may have constituted a trespass did not affect the question of the proximate cause.

**4. Same—Anticipation of Accident—Defendant's Negligence.**

Where a fireman on a fireboat was injured by the boat starting before lines from two coalboats had been cast off, negligence cannot be imputed to the owner of the coalboat for failure to have a person on the coalboat ready to cast off the lines from that end, as it was not to be supposed that the fireboat would start before the lines were cast off, and that plaintiff would get entangled therein.

Appeal from trial term, Kings county.

Action by John H. Trapp against William R. McClellan. From a judgment in favor of the plaintiff, the defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

La Roy S. Gove, for appellant.
James D. Bell, for respondent.

JENKS, J. The plaintiff was a fireman on the municipal fireboat Seth Low. At the time of the accident she lay at her dock, and two coalboats, the Palmer and the International, owned by the defendant, and moored alongside her, were fastened to her by two lines or ropes. One line from either boat was fastened to the amidships cleat, that from the Palmer being on the cleat above the one from the International. An alarm summoned the Seth Low to fire duty, and the plaintiff, in the discharge of his duty, went to cast off these lines from the cleat of the Seth Low. While he was thus employed his foot was caught or became entangled in the line running from the International, and was severed from his leg. The testimony is not clear as to how the accident happened. The plaintiff says that the line of the Palmer had a "bowling knot," which I take to be a bowline knot; that is, "a knot in which the loop can be made of any size, and does not jam nor render." Cent. Dict. The lower line had an eye-splice, made by splicing the end of the rope into itself. Cent. Dict., "eye-splice." The plaintiffs says that he first

threw off the line of the Palmer, and that he was at the chock, which was about three feet from the said cleat, pulling the Palmer's line through, when the other line caught his foot. He had trouble getting the bowline knot of the Palmer's line through the chock. He had to force it through, when the other line caught him. At that time the Seth Low was moving. He says that he did not see the line of the International until it caught his foot. He also says that he did not touch the "loop line" (i. e., the line of the International) when he cast off the line of the Palmer. At another time he says that the eye of the International's line caught his foot and pulled it off, but he could not tell what the cause of that was. Yet, again, he says that he cannot account for that line, with the eye passing through the chock, getting off the cleat. "Q. It would not get off of its own accord, would it? A. I don't know. If it ain't put on proper, it will slip off,—off the cleat." All that the defendant did to contribute to the accident, aside from the matter of leaving the boat unguarded, hereinafter discussed, was to extend the lines of his boats to the fireboat. It does not even appear that the defendant actually made the lines fast on the fire boat. The plaintiff says that they (i. e., the crew) "got orders from their foreman to put a line on the forward bitt, but on no other place on the boat," that he was not there when the fastenings were made, nor did he know who was there. There was nothing inherently dangerous in the line that ran from the International to the Seth Low, or in the fact that such line ended in an eye-splice. It did not lie upon the deck like a trap, but it was fastened to a cleat. There is no evidence to contradict the plaintiff's statement that he did not touch the line from the International, though his fellow servant, Tripp, who did not witness the accident, seemed to assume that the plaintiff "chucked it off," and that the only way it could get off was by being "thrown off." As the plaintiff, however, testified that the line would slip off if not "put on proper," it may be entirely possible that in releasing the upper line the plaintiff inadvertently released the lower line or disturbed it, or that, when the Low started out, the forward motion of that boat caused the line to work up and slip off the cleat. But there is no doubt that the accident was primarily due to the forward movement of the fireboat; for, had she remained in dock, the mere fact that a man's foot was caught in the eye of the line, or became entangled with the line, would not, provided the other boats remained at mooring, have resulted in the injury. Plaintiff's witness Tripp testified that he "didn't have no loop in it; and, when the boats go out, that gets tighter, jamming all the time. That is what cut his foot off." But the defendant took no part in the starting of the fireboat. The plaintiff was asked:

"How was your boat set in operation, how do they know in the pilot house that everything is in readiness to start? A. Some man on the boat will say, 'All right.' Q. Whose duty is that? A. The foreman's; anybody's; the foreman's duty to start it. Q. Who on this occasion gave the word that it was all right? A. Either Finn [who was a fellow employé] or I. I cannot swear which, but I hollered to the foreman that my foot was caught before we got under way,—before we got out of the slip, starting under way. I don't remember whether we stopped at all."

While, of course, the accident would not have happened if the line of the International had not been on the Low, yet before it could have happened the line must have been thrown off the cleat by some one on the Low, and therefore not by the defendant, or have been worked off the cleat by the motion of the Seth Low, and not by any agency of the defendant, and the Seth Low have started out from her dock, which was solely without any act or agency of the defendant. As the evidence on this branch of the case as the cause of the accident (i. e., the entanglement of the plaintiff in the line, and the consequent injury due to the starting out of the fireboat) is undisputed, the question of what is the proximate cause was for the court. Hoffman v. King, 160 N. Y. 618, 628, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715. I think that no omission or commission of the defendant in any duty he owed to the plaintiff can be said to be the proximate cause of the accident. In Hoffman v. King, 160 N. Y. 629, 55 N. E. 403, 46 L. R. A. 672, 73 Am. St. Rep. 715, the court, per Haight, J., cite the definition given by Webster of proximate cause, "That which immediately precedes and produces the effect." The definition of the Century Dictionary is, "That from which the effect might be expected to follow without the concurrence of any unusual circumstances." This expression of Lord Bacon is frequently quoted:

"It were infinite for the law to consider the causes of causes, and their impulsions one of another. Therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." Bac. Max. Reg. 1.

In Pollett v. Long, 56 N. Y. 200, 206, the court, per Grover, J., say:

"The party is liable for the natural and probable consequences of his wrongful act or omission, but not for those which are remote and speculative. The law will not enter upon inquiries as to the latter, for the reason that such a degree of certainty cannot be arrived at in respect thereto as to constitute a safe ground for judicial action. It is for this reason that judicial action is based upon the proximate, and not the remote, cause of events."

In Insurance Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65, the court, per Miller, J., say:

"It would be an unprofitable labor to enter into the examination of these cases. If we could deduce from them the best possible expression of the rule, it would remain, after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations. One of the most valuable criteria furnished us by these authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."

In Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, the court, per Strong, J., say:

"The question always is, 'Was there an unbroken connection between the wrongful act and the injury,—a continuous operation?' * * * The inquiry must therefore always be whether there was any intermediate cause, disconnected with the primary fault, and self-operating, which produced the injury."

Very often, I think, the qualification made by the word "proximate" is forgotten, and very often the contention is made upon the signification of the word "cause." It is thereupon argued that, because some condition for which the defendant is responsible was necessary before the accident could happen, therefore such condition was the "cause" of the accident. A very accurate and acute writer of English expressed the difference in the meaning of the word "cause" thus: "Of these two senses of the word 'cause,' viz., as that which brings a thing to be, and that on which a thing under given circumstances follows, the former is that," etc. J. H. Newman, Gr. of Assent, quoted in Cent. Dict. So in this case, undoubtedly, if the line of the defendant had not been upon the Seth Low, the accident could not have happened. It was a thing on which, under the circumstances, the thing happened; but it was not the thing which brought the thing to be, for that was the starting of the Seth Low. Or, in the more familiar language of the law, the placing of the rope upon the Seth Low was the "causa sine qua non," but the starting of the Seth Low was the "causa causans." But, as I have said, the starting of the Seth Low was due to the intervening act of a free agent, over which the defendant had no control. It is entirely true, as contended by the learned counsel for the respondent, that proximate cause does not mean in all cases nearest cause in time or space. "The proximate cause is the efficient cause,—the one that necessarily sets the other causes in operation. * * * It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster." Strong, J., in Insurance Co. v. Boon, 95 U. S. 117, 130, 24 L. Ed. 398.

Several cases cited by the learned counsel for the respondent may be discriminated. In the famous case of Guille v. Swan, 19 Johns. 381, 10 Am. Dec. 234, the court said that Guille was responsible, in that he had put himself in a position to invite help, and the crowd rushed forward, perhaps to aid him, perhaps to gratify their curiosity; and it held that the situation in which Guille had placed himself voluntarily and designedly was equivalent to a direct request to the crowd to follow him,—the court saying that he did call for help, and may have been heard. This case has been frequently cited in the decisions of this state. Shear. & R. Neg. § 35, states that the decision has been condemned on satisfactory grounds; citing Whart. Neg. § 95, where it is said that the exception was perilously extended in Guille v. Swan, although it is conceded that had it been shown that on his descent Guille was in such extreme danger that, from instinctive human impulse, persons passing by rushed in precipitately in order to save him, no opportunity being given to them for reflection, he might be viewed as the juridical cause of the damages inflicted by them, they being regarded as unconscious agents. The quarrel is, then, with that reasoning of the court which is based upon the fact that the crowd might be regarded as curiosity mongers. The learned counsel also cited the famous Squib Case (Scott v. Shepherd, 2 W. Bl. 892), the well-known decision in the Negro Boy Case (Vandenburgh v. Truax,

4 Denio, 464, 47 Am. Dec. 268), and many other authorities. But in these cases there was an unbroken connection between the act and the injury,—a continuous operation. Thus, in Railway Co. v. Kellogg, supra, Strong, J., says:

"The primary cause may be the proximate cause of the disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end,—that force being the proximate cause of the movement,—or as in the oft-cited case of the squib thrown in the market place. 2 W. Bl. 892."

In Swain v. Schieffelin, 134 N. Y. 471, 31 N. E. 1025, 18 L. R. A. 385, the court, per Bradley, J., say that Scott v. Shepherd, Vandenburgh v. Truax, and Guille v. Swan present cases where there was no intermediate efficient cause to which the injury may have been imputed, and hence the result may be attributed to the primary as the proximate cause. So, too, in Lowery v. Telegraph Co., 60 N. Y. 198, 19 Am. Rep. 154, Andrews, J., commenting upon the Squib Case and the Negro Boy Case, says that the defendant "set in motion a force which continued to operate until the injury was accomplished." And in Lowery v. Railway Co., 99 N. Y. 158, 1 N. E. 608, 52 Am. Rep. 12, where the fire fell from the locomotive upon the horse, which became frightened and ran away, and when the driver, to get control, attempted to drive against the curbstone, and the horse ran over it and injured the plaintiff, who sued the railway company, the court say:

"The action of the driver, in view of the exigency of the occasion, whether prudent or otherwise, may well be considered as a continuation of the original act, which was caused by the negligence of the defendant, and the defendant was liable as much as it would have been if the horse had been permitted to proceed without any control whatever."

The learned counsel for the respondent lays stress upon the fact that there was proof from which the jury might have inferred that there was a trespass. It may be seriously doubted whether this plaintiff could raise any question of trespass. Wittleder v. Illuminating Co., 47 App. Div. 410, 412, 62 N. Y. Supp. 297. But, so far as the question is concerned, there was evidence from which the jury might have found that there was a license to the defendant. Whether or not the lines were in the place permitted, it is entirely clear that the foreman of the fireboat saw the International alongside, that he did give privilege to coalboats to fasten to the forward bitt of the Seth Low, that he never warned the captains that they could not have a line fastened to the amidships cleat, but that he held his own deckman responsible, "who was on deck at all times looking out for them." But, in any event, I fail to see how the trespass, if established, would change the remote into the proximate cause.

And it is further contended that the defendant was liable in that he did not keep a man on guard upon the boat International, for the reason that, if such person had been there, then the line might have been "slacked" on the coalboat. Very possibly the accident might have been averted if at the moment the Seth Low was preparing to go out, and when the plaintiff was caught by the line, a person on board of the International could have freed the other end of

the line. But lack of due care is not to be attributed to the defendant in failing to keep a man upon the coalboat, in view of the possibility that when the fireboat was called for duty the fireman who was to cast off the line, or his fellow employé, might give the signal to start the boat before the lines were cast off from the cleat of the Seth Low, and while the plaintiff was entangled or caught therein, so that the defendant's servant would be ready on the coalboat to relieve the tension on the line due to the starting of the fireboat. See Thomp. Neg. (2d Ed.) §§ 49, 57, and authorities cited; Hubbell v. City of Yonkers, 104 N. Y. 434, 439, 10 N. E. 858, 58 Am. Rep. 522, and authorities cited; Saverio-Cella v. Railroad Co., 55 App. Div. 98, 101, 66 N. Y. Supp. 1021, and authorities cited.

The judgment and order appealed from should be reversed, and a new trial ordered; costs to abide the event. All concur.