# Staunton

## TOWN OF ASHLAND V. E. W. NEWMAN AND MARY D. NEWMAN.

September 20, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Andrew J. Ellis,* for the appellant.

*Haw & Haw,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

Appellee, E. W. Newman, was, in the year 1922, and is now, the owner of a grist mill and water power site situated on the South Anna river in Hanover county, approximately three miles from the town of Ashland. Appellant maintains and operates a water works and sewer system as a municipal enterprise for gain, and acquires the power and water used by it in the operation of its plants from the appellee, under a written contract dated June 20, 1922. A controversy arose between the parties as to the rate of speed at which the pumps should be operated by appellant and as to the basis on which appellee should be paid for the power consumed.

At the first January rules, 1930, appellant filed its bill of complaint, praying for a construction of the contract and

the entry of a declaratory judgment. The pertinent allegations of the bill relative to the contract are as follows:

"That your complainant is a municipal corporation, created under the laws of Virginia, and as such, maintains and operates a water works and sewer system as a public enterprise for the health, comfort and convenience of its citizens;

"That the water and power used by your complainant in the operation of its said plant was and is being acquired from the said defendants under and by the terms of a certain contract, made by and between your complainant and the said defendants, dated the 20th day of June, 1922, a certified copy of which is filed herewith, marked 'Exhibit A,' and prayed to be taken and read as a part of this bill or petition;

"That under the terms of the said contract, the said defendants granted and conferred upon your complainant, along with various other rights and privileges, the right to pump water from their mill pond and the right to use their dam, water and water power in the operation of its said water works, for the period of thirty-five years from the 1st day of January, 1923, with the right in your complainant to extend the contract for the term of thirty-five years additional at the expiration of the first period;

"That in consideration of all of the rights and privileges granted unto your complainant and of the obligations imposed upon the said defendants by the terms of the said contract, your complainant agreed to pay the said defendant, E. W. Newman, a certain monthly charge based upon the amount of water power or energy actually consumed by it during the month, in the operation of its said water works, and the full provision with reference to the compensation to be paid by your complainant to the said defendant, E. W. Newman, is set forth on page 3 of the said contract and is in the following words and figures, to-wit:

" 'The said town, for and in consideration of the rights and privileges herein granted to it and of the obligations

hereby imposed upon the said grantors, doth covenant and agree as follows, to-wit:

" '1st. To pay to the said E. W. Newman the minimum sum of one hundred ($100) dollars, per calendar month during the life of this agreement, or any extension thereof for the rights and privileges herein granted, including the use of 4,000 horse power hours of power during each calendar month (which said sum, however, may be abated or reduced by reason of the special provision with reference to the non-availability of the power hereinafter set forth), and the additional sum of two cents (2 cts.) per horse power hour, for all power consumed during any such calendar month over and above the said 4,000 horse power hours included in said minimum charge, on or before the 20th day of the month following, the first payment to become due and payable on or before the 20th day of February, 1923.'

"That the said contract further provides on page 6 thereof, as follows:

" '5th. That the said town shall keep an accurate record of the amount of power, which shall be measured at the turbine water wheel shaft, consumed by it during each calendar month, in some good and approved manner, which said record shall be open to the inspection of the said E. W. Newman at all reasonable times; but the said E. W. Newman shall have the right, however, to also install some approved power measuring device in the said water system, provided the same shall be done at his own expenses and shall not in any way interfere with the operation of the said system or affect the efficiency of the said pumps.'

"That the said contract further provides on page 8 thereof, as follows:

" '12th. It is agreed that the town of Ashland shall use due diligence to operate its pumps at fifty (50) revolutions per minute (their rated speed) whenever there is a scarcity of water.'

\*    \*    \*    \*    \*    \*    \*    \*

"That the said defendant, E. W. Newman, contends that your complainant is obliged, under the terms of the said con-

tract, to operate its pumps at the rate of fifty revolutions per minute at all times, and that your complainant has no right to operate the pumps at any lesser speed or rate at any time, and that if your complainant does elect to operate the pumps at a rate of speed of less than fifty revolutions per minute, it must, nevertheless, pay him on the basis of the pumps being operated at fifty revolutions per minute; and the said defendant, E. W. Newman, is continuing to present bills to your complainant for power consumed, based on the theory that the pumps were operated at fifty revolutions per minute, when they were actually operated at forty revolutions per minute, which bills are in excess of the amount actually due and owing by your complainant to the said defendant, E. W. Newman, and he, the said E. W. Newman, has threatened to cut off the power from your complainant's pumps and thereby prevent your complainant from operating its water works system and deprive its citizens of water and sewage, unless it shall pay the bills as presented by him.

"Your complainant avers that the dispute between it and the said defendants, arising out of the said contract, is an actual controversy, the solution of which depends upon the proper interpretation of the said contract, and your complainant further avers that under the proper construction of the said contract, your complainant has the right to operate the pumps at such rate of speed as it may elect to see proper at all times, excepting only whenever there is a scarcity of water, in which case your complainant is required to use due diligence to operate its pumps at the rate of fifty revolutions per minute, and that the only obligation resting upon your complainant is to pay to the said defendant, E. W. Newman, the minimum monthly charge of $100 for the rights and privileges granted to it under the terms of the said contract, including the use of 4,000 horse power hours of power during such month (which said sum, however, may be abated or reduced by reason of the special provision with reference to the non-availability of the power contained in the said contract) and the additional sum of

two cents per horse power for all power consumed during any such month over and above the said 4,000 horse power hours, included in said minimum charge, and that the proper method of determining the number of horse power hours consumed during any such month is to be determined by the rate of speed at which your complainant elects to operate its said pumps and the number of hours at which such pumps are operated as laid down in the rules or formulas prepared by the said Ambler Engineering Company, namely, on the basis of 12.52 horse power hours for every 1,000 revolutions made by the pumps when operated at the rate of fifty revolutions per minute, 11.63 horse power hours for every 1,000 revolutions made by the pumps when operated at the rate of forty revolutions per minute, and 11.75 horse power hours for every 1,000 revolutions made by the pumps when operated at the rate of thirty revolutions per minute."

The cause came on to be heard upon the bill, answer and cross-bill and answer thereto, and upon the evidence of sundry witnesses. The court construed the contract and entered this decree:

"* * * the court doth adjudge, order and decree that the town of Ashland, pursuant to the terms of the aforesaid contract as hereinbefore construed, shall operate its pumps at fifty revolutions per minute, their rated speed, at all times when the flow of the river and the conditions of the head of water are such that the wheel can operate the pumps at such speed, and that whenever there is a scarcity of water the town shall use due diligence to operate its pumps at said speed of fifty revolutions per minute; further that all calculations for the ascertainment of the power consumed shall be upon the basis of fifty revolutions per minute in conformity with the formula set out in the report of the Ambler Engineering Company, dated May 15, 1925, and filed as Exhibit 'B' with the bill in this suit, unless the flow of the river and condition of the head shall be such that the pumps cannot be operated at a speed of fifty revolutions per minute, in which event the calculation shall be in con-

formity with the formulae of the Ambler Engineering Company report aforesaid and on the basis of a speed of fifty revolutions per minute, forty revolutions per minute or thirty revolutions per minute, whichever shall be nearest speed to that at which the pumps have been operated for the time in question."

The challenge to this action of the court constitutes the only assignment of error having any merit in it, and its determination is conclusive of the case.

A casual reading of the contract discloses that it lacks definiteness in regard to the mutual obligations of the parties as to the rated speed of the pumps. The only language throwing any light on the question is this: "It is agreed that the town of Ashland shall use due diligence to operate its pumps at fifty (50) revolutions per minute (their rated speed) whenever there is a scarcity of water." However, when we read the report of the engineer employed by appellant, together with the contract, it seems reasonably clear that the contention of appellant, that it had the right to operate the pumps at any speed it sees fit, is untenable. The record clearly shows that the plant had been designed and was actually in operation when the contract was signed, and that it was mutually understood between the appellee and the commissioners appointed by resolution of the town council to enter into the contract, that the pumps were designed for, and were to be operated at fifty revolutions per minute and that such speed was the basis on which appellee was to be paid for the power furnished. For three years the parties acted upon this construction of the contract. Upon the retirement of the three commissioners who entered into the contract for the town, the present commissioners contested the right of appellee to demand payment on such a speed basis and this suit is the result of the contest.

In *C. & P. Telephone Co.* v. *Wythe Mut. Tel. Co.*, 142 Va. 529, 539, 129 S. E. 389, 392, it is held that this court in construing a contract will look to the circumstances surrounding the transaction, the construction placed upon the

contract by the parties thereto, and from that viewpoint seek to arrive at an equitable conclusion. In that case this language is employed:

■ "In the construction of contracts, the rule is stated by Judge Burks, in *Bank of Old Dominion* v. *McVeigh*, 32 Gratt. (73 Va.) 530, as follows: 'As said in the opinion in *Talbot* v. *Richmond & Danville R. R. Co.* (3 Va. Law Journal 486), to ascertain the intent of the parties is the fundamental rule in the construction of agreements (*Canal Co.* v. *Hill*, 15 Wall. 94 [21 L. Ed. 64]) ; and in such construction courts look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of words and of the correct application of the language to the things described.' "

This doctrine of practical construction has received the approval of the court in *Knopf* v. *Richmond, F. & P. R. Co.*, 85 Va. 769, 8 S. E. 787; *Butler Bros.-Hoff Co.* v. *Virginian Ry. Co.*, 113 Va. 28, 73 S. E. 441; and *Revell* v. *Ballard*, 144 Va. 371, 132 S. E. 322, and was reaffirmed in the *Telephone Case, supra.*

■ It is well settled that a contract entered into by a municipality which has no reference to some public duty or governmental activity of the municipality is subject to a practical construction as in the case of individuals. See *Indianapolis* v. *Indianapolis Gas-Light, etc., Co.*, 66 Ind. 396; 19 R. C. L. p. 1130; 44 Corpus Juris, p. 127; *Devany* v. *South Norfolk*, 143 Va. 768, 129 S. E. 672; *City of Norfolk* v. *Bell*, 149 Va. 772, 141 S. E. 844.

Let us, then, test the instant case by the doctrine of practical construction.

The evidence of appellee, of two of the commissioners and of Mr. Ambler, the expert of appellant, shows that prior to the execution of the contract, Mr. Ambler had made for ap-

pellant a design of the water plant, which specified the speed of the pumps. The following evidence of Mr. Ambler is significant:

"Q. Mr. Ambler, what do you mean by the rated speed of these pumps?

"A. When I use that term I am referring to the speed at which the plant was designed. You have to design a plant at a certain speed and that speed, using a triplex pump, must not be higher than the manufacturers recommend for that type and size of pump.

"Q. Well, do you use it synonymously with design?

"A. I use it in that sense, *rated in the sense it was the basis of the design that the plant should be operated at fifty revolutions per minute.* That was more economical for the pump and more economical from Mr. Newman's standpoint too. The overall efficiency was greater." (Italics supplied.)

It is further disclosed by the evidence of the commissioners that the pump man was instructed by them to operate the pump at fifty revolutions per minute and that they used that basis in their settlement with appellee for a period of three years.

Under all the facts and circumstances of this case, as disclosed by the record, we are of opinion that the construction of the contract by the learned chancellor is consistent "with the right of the case" and, therefore, the decree is affirmed.

*Affirmed.*

EPES, J., dissenting.

I am unable to concur in either the opinion or the judgment of the court. To read into this contract a provision requiring the town of Ashland to operate its pumps at fifty revolutions per minute at all times when the flow of the river and the conditions of the head of water are such that the wheels can operate the pumps at such speed, is to insert therein a provision which I am unable to find either expressed or implied in the contract.

It is the function of the court to construe the contract made by the parties, not to make a contract, in whole or in part, for them. In construing a formal written contract it should be careful not to insert, under the guise of construction, any provision which is not to be found stated in the contract itself either expressly or by implication.

The polestar for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used*. "It is true that it is commonly said that the court in the interpretation of contracts is endeavoring to find the intention of the parties. * * * In contracts of which no memorial is made and no writing required by law, it is doubtless true that when parties have made a bargain which both of them understand in a certain sense, their intent (which at least has been made plain to one another) must be sought, however inadequately expressed. But in contracts of the other class [*i. e.*, those in which a written memorial, not incomplete on its face, has been made] this is not true, and although courts may say they are seeking the intention of the parties, the assertion is even more emphatic that this intention can be found *only in the expressions of the parties in the writing*. In effect, therefore, it is not the real intent, but the intent expressed or apparent in the writing which is sought." 2 Williamson on Cont. section 610, pp. 1176-7. (Matter in brackets inserted and italicizing done by me.)

The court may and should, as an aid to the interpretation of the words used, take into consideration the subject matter, the facts and circumstances surrounding the parties when they entered into the contract, the purposes for which it was made, and under some circumstances the acts of the parties done or permitted in the performance thereof. But it is not at liberty, because it has acquired a knowledge of those facts, to put a construction on the words the parties have used which they do not properly bear or to read into the contract terms and provisions which are neither expressly stated nor implied by the words used. It is the

court's duty to declare what the instrument *itself* says it says.

I am unable to find anything in the words used by these parties which either expressly or impliedly requires the town to operate its pumps or use due diligence to operate them at fifty revolutions per minute, *except whenever there is a scarcity of water.*

HOLT, J., concurs in dissent.