## SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. MAYOR AND BOARD OF ALDERMEN OF CITY OF MERIDIAN, MISS.

### No. 7426.

Circuit Court of Appeals, Fifth Circuit.

Jan. 23, 1935.

Ben F. Cameron, of Meridian, Miss., and George Butler and C. B. Snow, both of Jackson, Miss., for appellant.

Charles H. Westbrook, of Meridian, Miss., for appellees.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

A written contract entered into in November, 1929, by and between the Southern Bell Telephone & Telegraph Company, the appellant (which was referred to as the company), and the mayor and board of aldermen of the city of Meridian, Miss., the appellees (referred to as the city), after reciting that the city recognized the company's right under Mississippi statutes to operate its telephone business in the city's streets and other public places, and that the city desires to secure the benefits which enured to it under the previous municipal franchise granted by it to the company, and certain other privileges which have been agreed to by both parties to the contract, provided, among other things, as follows: That in consideration of the premises, and the agreement of the city to pay the company $100 a year, in advance, for a stated period of time, the company would furnish the city, without charge, for use of its officials and employees on the city's business, described telephone service, no charge to be made by the company for moving or relocating such telephone stations, the city to pay the company the latter's regular schedule rates for toll service and for stations in excess of those described; that the company would designate and provide, without further charge, to the city (a) on each pole now or hereafter owned by the company on the public streets and alleys within the corporate limits of the city space for fixtures for, or space for one cross-arm for wires of the police and fire alarm signaling system of the city, and (b), in each conduit now or hereafter owned or used by the company under the city's streets or alleys, one duct for cables of the police and/or fire alarm signaling system of the city, those cross-arms, fixtures, and conduits to be furnished, erected, and maintained at the city's expense, the same to be placed and maintained subject to reasonable regulations of the company and so as not to interfere with the operation or use of the company's service, or endanger its property or employees; the company being obligated to maintain its wires on said poles and in said conduits in such manner as not to interfere with the operation of the city's police and fire alarm signaling system. The contract contained the following provisions:

"11. The City hereby assumes all liability for, and will indemnify and save harmless the Company from and against any and all loss or damage to property of the Com-

pany and from and against all damages which may arise or accrue to the Company by reason of or in connection with the construction, maintenance or operation by the City of any of its cables, wires, attachments, or other appurtenances in the conduits or upon the poles of the Company, or by reason or in consequence of any interruption of service over the conductors of the City in said conduits or on said poles.

"12. The Company hereby assumes all liability for and will indemnify and save harmless the City from and against all liability for damages which may arise or accrue to the City from any injury to persons or property caused by the Company or any of its employees in the erection, maintenance and use of its telephone property upon, along, under, over and across the streets, avenues, alleys and public places of the City and/or the neglect of the Company or any of its employees to comply with any ordinance relative to the use of said streets, avenues, alleys and public places. The City agrees to give notice in writing to the Company in all claims and suits against it arising out of any such matters, as soon as may be practicable after being itself notified thereof."

The appellant, the company, brought its action against the appellee, the city, for the recovery of the sum of $5,600, being the aggregate of the amount, $5,000, paid by the company to W. R. Birdsong, and of the amount, $600, of attorney's fee paid by the company in circumstances alleged in its declaration. The declaration, after alleging the execution of the above-mentioned contract and making a copy thereof an exhibit, alleged to the following effect: Said Birdsong was employed by the city as a member of its fire department, and was assigned the duty of looking after the maintenance of the city's fire alarm and police signaling system, including the wires maintained on the company's poles. On or about August 8, 1932, said Birdsong, while engaged in the performance of his duties, climbed a pole which had been erected by the company, on which the city had placed wires belonging to its police and fire alarm signaling system, for the purpose of clearing some trouble which had developed in that system, and while on the pole about 15 feet from the ground, said pole broke off about six inches below the surface of the ground and fell with said Birdsong and on him, with the result that he received serious and permanent personal injuries. The pole fell as a result of decay in it beneath the surface of the ground. Birdsong made claim against the company for damages resulting as above stated, asserting that the company was liable to him therefor. After making full investigation of the facts the company reached the conclusion that it was liable to Birdsong for the casualty and injury, negotiated with Birdsong for a settlement, with the result that Birdsong offered to settle said claim at and for the total sum of $5,000. The company advised the city of said offer of settlement, and that the company was of opinion that said settlement ought to be made. Upon being so advised the city agreed that said settlement be consummated without prejudice to the rights of the company to claim reimbursement from the city of the amount so paid, pursuant to the terms of said contract. The city demurred to the company's declaration on grounds having the effect of raising the questions: (a) Whether said contract obligated the city to indemnify the company against the damages sustained by the latter under the facts set forth in the declaration? (b) Did the city, under the state of facts shown by the declaration, have the power to obligate itself by contract to assume liability for, and indemnify the company against, the damages alleged to have been sustained by the latter? The court sustained that demurrer, and, upon the company declining to plead further, entered judgment dismissing the suit.

From the declaration's allegations, and its omission of allegations which might have been made, it fairly may be inferred that the alleged falling of the pole and the consequent injury to Birdsong were due to negligence chargeable against the company, and that the alleged injury and damage to Birdsong were not proximately contributed to by any negligence or fault chargeable against the city. The liability asserted by the suit was based upon the provision of the above set out section 11 of the contract, that "the City hereby assumes all liability for, and will indemnify and save harmless the Company * * * from and against all damages which may arise or accrue to the Company by reason of or in connection with the construction, maintenance or operation by the City of any of its cables, wires, attachment, or other appurtenances in the conduits or upon the poles of the Company. * * *"

It is well settled that a contract of indemnity will not be construed to indemnify

the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. North American Ry. Construction Co. v. Cincinnati Traction Co. (C. C. A.) 172 F. 214, 215; Washington & Berkeley Bridge Co. v. Pennsylvania Steel Co. (C. C.) 215 F. 32; Perry v. Payne, 217 Pa. 252, 53, 11 L. R. A. (N. S.) 1173, 10 A 89; Mitchell v. Southern R. Co. 74 S. W. 216; Wallace v. Unit C.) 16 F.(2d) 309; Id. (C. C. F.(2d) 20; Buckeye Cotton Oil Co. v. Louisville & N. R. Co. (C. C. A.) 24 F.(2d) 347; 31 C. J. 431; 14 R. C. L. 47. The case of North American Ry. Construction Co. v. Cincinnati Traction Co., supra, was an action by the traction company against the construction company upon a contract under which the construction company was to rehabilitate the tracks of the traction company, which provided that the work of the contractor be done without interference with the cars of the traction company, and that the construction company would protect, indemnify, and save harmless the traction company "from all suits and actions which may be brought against the said company and from and against all claims of any kind for damages done or caused in the course of construction of the work provided for by this contract, or in consequence thereof, in any manner, including all damages and injury to persons, to land or buildings, all injuries to animals or vehicles or to any property whatever." At a place where the traction company switched its east-bound cars on to the west-bound track around a long excavation, 14 inches in depth, made by the contractor for replacing the east-bound track, a car was stopped in the night between street crossings, and a passenger alighting on the right-hand side fell into the excavation and received injuries for which she recovered judgment against the traction company. The court held that the injury to the passenger was not one received "in consequence" of the construction company's work, but was proximately due to the negligence of the traction company's employees operating the car, who, with full knowledge of the excavation, permitted the passenger to alight at an unusual place on the side of the car next to the excavation, and that the traction company was not entitled to recover on the indemnity contract. The court's opinion contained the following:

"Contracts of indemnity such as the one here sued upon, are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other—over which the party indemnified has no control, and the party indemnifying has control. Indeed, it would take clear language to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified. * * *

"Proximate cause is the wrongful act that caused the injury, usually the first wrongful act that starts the party injured on his way to the injury. That act, in this case, was the negligence of the traction company in allowing Mrs. Whitteker to get off on the wrong side of the car, the side next to the excavation. True, if the excavation had not been there, the negligence of the traction company might not have resulted in injury. But the excavation was not wrongfully there, and was not, as against the traction company, wrongfully left unmarked and unlighted. * * * In no view of this case can we see the proximate cause of the injury as other than the wrongful act of the traction company in depositing Mrs. Whitteker where she was deposited."

As the contract sued on authorized the city to place its cross-arms and wires on the company's poles and its cables in the company's underground conduits, and to maintain and use the cross-arms, wires, cables, and other fixtures furnished by the city at its own expense, subject to reasonable regulations of the company, the adoption of the provision of section 11 of the contract which is relied on by the company is readily explainable on the ground that the parties to the contract realized that some fault chargeable against the city in the exercise of the rights or privileges conferred upon it with reference to its use of the company's property might be the sole or a proximately contributing cause of the accrual of a liability of the company for loss or damage to the persons or property of third parties having dealings or relations with the company. Section 11 of the contract has a field of operation with reference to conduct of the city or its employees

which is accompanied by negligence or fault chargeable against the city. Certainly that section does not, by clear and unequivocal language, show that the city consented to indemnify the company against damages proximately resulting from the company's negligence, or from a defective condition of a pole or other property of the company over which condition the city had no control. The failure of section 11 clearly to disclose an intention to indemnify against the indemnitee's, the company's, own negligence, when considered in connection with the immediately succeeding section of the contract, quite clearly manifests the absence of an intention to obligate the city to indemnify the company from and against damages that may arise or accrue against the company in consequence of negligence chargeable against the latter. By section 12 of the contract the company obligates itself to indemnify the city from and against all liability for damages which may arise or accrue to the city from any injury to persons or property caused by the company or any of its employees in the erection, maintenance, and use of its telephone property upon, along, under, over, and across the streets, avenues, alleys, and public places of the city. By that provision the company obligated itself to indemnify the city against all liability for damages arising or accruing to the city from any injury to persons or property caused by the negligence or default of the company or any of its employees in the erection, maintenance, and use of its telephone property located as stated. The personal injury to Birdsong, due to negligence chargeable against the company in the erection or maintenance of the pole which fell in consequence of its defective condition, gave rise to a liability of the company for damages, within the meaning of section 12. If the provision of section 11 which is relied on in behalf of the company has the meaning attributed to it by the company's counsel, the city by its indemnity obligation became indirectly liable for damages for the personal injuries sustained by Birdsong in consequence of negligence chargeable against the company, though the company obligated itself to indemnify the city against all liability for damages so arising or accruing. It is not reasonably conceivable that the parties intended anything contained in section 11 of the contract to have the effect of depriving the city of any substantial benefit from the obligation imposed upon the company by section 12 of the contract to indemnify the city against all liability for injury to persons or property caused by negligence chargeable against the company. We conclude that the allegations of the declaration do not show that the city is subject to the liability asserted, that the declaration was subject to demurrer on the first above-stated ground, and that the court did not err in sustaining the demurrer to the declaration. This conclusion makes unnecessary the consideration of the question whether the city has the power to indemnify another against the consequences of the latter's negligence.

The judgment is affirmed.