## CACEY et al. v. VIRGINIAN RY. CO.
### No. 4048.

Circuit Court of Appeals, Fourth Circuit.

Oct. 6, 1936.

Joseph M. Sanders, of Bluefield, W. Va. (Walter G. Burton, of Princeton, W. Va., and Franklin K. Day, Jr., of Bluefield, W. Va., on the brief), for appellants.

John R. Pendleton, of Princeton, W. Va. (W. H. T. Loyall and W. C. Plunkett, both of Norfolk, Va., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and MYERS, District Judge.

NORTHCOTT, Circuit Judge.

This is an action at law, in assumpsit, brought by the appellee, a Virginia corporation, herein referred to as the plaintiff, against the appellants, citizens of the state of West Virginia, herein referred to as the defendants, in the District Court of the United States for the Southern District of West Virginia, to recover, under an indemnity agreement executed by the defendants, the amount of a judgment paid by the plaintiff to one Okley Stike, an infant, who was struck by a passenger train, operated by the plaintiff, while crossing the tracks of the plaintiff's railroad at Matoaka, W. Va. The amount of the judgment paid, together with attorneys' fees, was $13,181.95. By stipulation the cause was submitted to the court in lieu of a jury, and after a hearing, at which evidence was taken, the judge below entered an order giving judgment for the plaintiff for said sum. From this action this appeal was brought.

In the year 1905, Pawama Coal & Coke Company operated a coal mine at Matoaka, W. Va. Shortly thereafter, the plaintiff laid the track of its railroad through the town. This track separated the mining camp of the coal company from its offices and store and from the town proper. The building of the railroad left a precipitous embankment in front of the mining camp, which camp was south of the town. In order to enable its employees and tenants to conveniently cross the Virginian track to the office, store, and town, the coal company built wooden steps down the embankment. On the other side of the railroad track were steps leading up a less precipitous bank to the town. These latter steps were afterwards torn down, leaving a path up the bank next to the town. At the time of the injury to the minor, Stike, the flight of steps on one side of the railroad track, the path on the opposite side, and the intervening tracks of the railroad constituted a walkway or crossing over the tracks.

The mining of coal was stopped by the company that has succeeded to the ownership of the property, and the defendant Cacey, on April 1, 1929, purchased the houses constituting the camp, thirty-five in number, thirty-one of them being located on the south side of the railroad track. In October, 1929, the defendant Hughes purchased a one-half interest in the property, and Cacey and Hughes have owned it since that time.

When the steps were first built, they were partly located on plaintiff's right of way, and the coal company was required, by the plaintiff, to enter into a lease agreement. Cacey & Hughes were required to execute a similar lease dated November 3, 1928, which was in the usual printed form of encroachment lease taken by the railway company and contained the following indemnity clause: "The party of the second part agrees to indemnify The Virginian Railway Company and save it harmless from any and all claims and costs that may arise or be made, for injury, death, loss or damage resulting to the Railway Company's employees or property, or to other persons or their property, including the lessee, or the occupants of said premises, by reason or in consequence of the occupancy or the use of the said premises, or the use of the property of the Railway Company adjacent thereto."

This lease was in full force and effect on March 14, 1931, at which time Okley Stike, eight years and five months of age, was struck and seriously injured by a passenger train of the Virginian Railway Company. Okley Stike lived about one mile south of the Virginian tracks and at the time of his injury was on his way to Matoaka to deliver milk for his father. He did not live on the property owned by Cacey & Hughes. He had just descended the steps and was standing on the ties at ⸳ of the eastbound track waiting on the westbound track to standing there, an eastbound

passenger train struck him. He instituted an action against the plaintiff and recovered a judgment for $10,000. This judgment was affirmed by the Supreme Court of Appeals of West Virginia. Stike v. Virginian Railway Company et al., 114 W.Va. 832, 174 S.E. 418.

Cacey & Hughes were notified by the railway company of the claim set up by Okley Stike for damages on account of his injury, and of the institution of the suit against the railway company for damages, and demand was made upon them by the railway company to defend the suit, or assist in defending it, and also to reimburse the railway company for what it had been compelled to pay, which they declined and refused to do.

The plaintiff paid off the Stike judgment and brought this action.

The only question involved is whether the indemnity clause of the contract of lease entered into by the defendants covered the judgment recovered by the infant Stike and paid by the railway company.

It is contended on behalf of the defendants that the lease agreement did not indemnify the railway company for injuries occurring on its tracks and caused solely by the negligence of the railway employees, and that even if intended to indemnify against claims for injuries to certain classes of persons the indemnity did not extend to the Stike claim.

■ When we read the indemnity clause and give to the words used the interpretation demanded by their plain, ordinary meaning, we are forced to the conclusion that the first contention on behalf of the defendants is not sound. The language used is broad, comprehensive, and without ambiguity. If the words used did not mean to indemnify against claims of the character of the Stike claim, then they meant nothing. There was no other class of claims that could be brought against the railway company against which to indemnify.

This interpretation of the indemnity clause is emphasized when we look at the circumstances surrounding the execution of the lease.

" 'To ascertain the intent of the parties is the fundamental rule in the construction of agreements (Chesapeake & O. Canal Co. v. Hill, 15 Wall. 94, 21 L.Ed. 64) ; and in such construction courts look to the language employed, the subject-matter, and: the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of words and of the correct application of the language to the things described.' " Town of Ashland v. Newman, 163 Va. 500, 175 S.E. 724, 726, 176 S.E. 470.

In entering into the lease contract the railway company was acting in a private character as a property owner and entirely outside the scope of a common carrier. The lease was entered into for a nominal consideration ($1) and solely for the benefit of the defendants. The maintenance of the steps could not possibly be of the slightest benefit to the railway company in any capacity, and in no way aided it in its business, and the company would evidently not have consented to incur the additional risk of accidents from the existence of the right of way for practically no rental, unless it were indemnified in some way.

■ It has been repeatedly held that a railway company not acting as a common carrier may exempt itself, by contract, from liability for negligence. National Transit Co. v. Davis, Director General of Railroads (C.C.A.) 6 F.(2d) 729; Sunlight Carbon Co. v. St. Louis & S. F. R. Co. (C.C.A.) 15 F.(2d) 802; Hartford Fire Insurance Co. v. Chicago, M. & St. P. R. Co., 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84; Santa Fe, P. & P. R. Co. v. Grant Brothers Construction Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787.

See, also, Markham v. Duke Land & Imp. Co. et al., 201 N.C. 117, 158 S.E. 852; St. Louis, etc., R. Co. v. Stewart et al. (Mo.Sup.) 187 S.W. 836; Buckeye Cotton Oil Co. v. Louisville & N. R. Co. (C.C.A.) 24 F.(2d) 347.

The location and use of the steps and the adjacent railroad tracks added greatly to the hazard of injury by passing trains. An examination of the decision of the West Virginia Court in the Stike Case, supra, shows that the railway was held liable for the injury to Stike because the presence of the steps consented to by the railway company constituted an invitation to the public to cross the track at that point and cast upon the railway company all the duties necessary to a public crossing. The

court held that the injured boy was an invitee and not a licensee. But for the steps there would have been no liability and consequent loss to the plaintiff. Against any loss of this character the defendants contracted to hold the railway company harmless. The consequences may be harsh, but contracts that are plain must be enforced.

The decisions relied upon on behalf of the defendants deal with indemnity clauses contained in contracts from which the indemnitee derived some benefit, either direct or indirect, and they are not controlling here.

The contention that Stike did not come within the class of persons covered by the indemnity clause is not sound. The language of the clause, "or to other persons," is general and all inclusive. At the time of the execution of the lease by Cacey & Hughes, the crossing over the railroad tracks, down the steps, was in use by the public generally, and this fact was known to the defendants.

The judgment is affirmed.

PARKER, Circuit Judge (dissenting).

The crossing steps involved in this litigation were constructed because the plaintiff railway company laid its track through Matoaka, W. Va., in such way as to separate a large part of the mining village of the Pawama Coal & Coke Company from the town. The steps were built by the coal company in order that its employees and tenants might have more convenient access to the town from which they had been separated by the construction of the tracks. After they had been built, the railway company required the execution of a dollar-a-year encroachment lease for the property on which they were located, for the evident purpose of preventing an easement or right of way being acquired as a result of their maintenance.

Some time after the defendants had purchased the property in the neighborhood of the steps, they were approached by an agent of the railway company and told that, if the steps were to remain, it would be necessary for the defendants to secure an encroachment lease for the property affected, just as they had done with respect to a water pipe which they had laid under the railway company's tracks. Nothing was said as to indemnifying the company against liability for crossing accidents due to the negligent operation of its trains; and the lease as executed contains no express provision to that effect, but merely a general provision to indemnify against claims arising "by reason or in consequence of the occupancy or use" of the premises leased. The lease, which was an ordinary form of encroachment lease, embraced merely the land covered by the steps; the description of the premises leased being as follows, viz.: "The following described tract of land, situated in the County of Mercer and State of West Virginia, to wit: At Matoaka, W. Va., M. P. 356.4. Steps opposite survey station 275-15 to survey station 275-50 from the southerly right of way boundary line to within 8 feet of the center line of the eastbound main track as shown in yellow on blueprint hereto attached and made a part hereof."

Paragraph 1 of the covenants contained in the lease is that the land leased is to be used as a "location for steps." Paragraph 6, which is the one here material, is as follows: "The party of the second part agrees to indemnify The Virginian Railway Company and save it harmless from any and all claims and costs that may arise or be made, for injury, death, loss or damage resulting to the Railway Company's employees or property, or to other persons or their property, including the lessee, or the occupants of said premises, *by reason or in consequence of the occupancy or the use of the said premises,* or the use of the property of the Railway Company adjacent thereto." (Italics supplied.)

Okley Stike was injured while crossing the railway tracks at this crossing, as a result of the negligence of the railway company in the operation of one of its trains, and recovered a verdict and judgment in the sum of $10,000 on account of this negligence; but the claim upon which the verdict and judgment were obtained was clearly not one arising "by reason or in consequence of the occupancy or the use" of the steps, or of the crossing to which they led, but one arising "by reason and in consequence of" the negligence of the railway company in the operation of its train. Where one properly using a crossing is injured as a result of such negligence, it is not the use of the crossing but the negligence which causes the injury; and the claim thereupon arising cannot properly be said to arise "by reason or in consequence" of the use of the crossing, for these terms import a causal relationship. The use of the crossing no more establishes such causal relationship, even though the injury would not have occurred

but for such use, than the use of a street could be said to be the cause of an injury caused by a falling sign, merely because the person injured would not have been struck by the sign if he had not been using the street. The distinction between the cause of an injury and a mere condition without which it would not have occurred is well recognized in the law. For the distinction between the two, see 11 C.J. 37, note b; State v. Baller, 26 W.Va. 90, 94, 53 Am.Rep. 66, 68; Cleveland v. Bangor, 87 Me. 259, 32 A. 892, 47 Am.St.Rep. 326; Trapp v. McClellan, 68 App.Div. 362, 366, 74 N.Y.S. 130; Boney v. Atlantic & N. C. R. Co., 145 N.C. 248, 58 S.E. 1082. And a contract indemnifying against claims arising by reason or in consequence of the use of property ought not be construed to cover a case where the use of the property was not the cause of the arising of the claim but merely furnished a situation in which the negligence of another gave rise to the claim. If it had been intended to indemnify against liability for claims arising out of injuries occurring at the crossing, there would have been no trouble in so providing by appropriate language.

An additional reason for giving the language such a construction is that only the steps are under the control of defendants. The operation of trains is under the control of plaintiff. If the defendants fail to maintain the steps in proper repair, it is reasonable that they should indemnify plaintiff against claims arising therefrom; but it is not reasonable that defendants should contract to save plaintiff harmless from claims arising out of its own negligence in operating trains over which defendants have no control. As said by Judge Grosscup, speaking for the Circuit Court of Appeals of the Seventh Circuit in North American Ry. Construction Co. v. Cincinnati Traction Co. (C.C.A.7th) 172 F. 214, 216: "Contracts of indemnity such as the one here sued upon, are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other— over which the party indemnified has no control, and the party indemnifying has control. Indeed, it would take clear language to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified."

It seems clear that claims on account of injuries caused, not by the use of the crossing, but by the negligence of the railway company, are not embraced within the plain language of the agreement; but, even if there were ambiguity in the language used, the rule is well settled that the contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. 14 R.C.L. 47; 31 C.J. 451; Washington & Berkeley Bridge Co. v. Pennsylvania Steel Co. (C.C.A.4th) 215 F. 32; Southern Bell Tel. & Tel. Co. v. Mayor and Board of Aldermen (C.C.A.5th) 74 F.(2d) 983, 984; Buckeye Cotton Oil Co. v. Louisville & N. R. Co. (C.C.A.6th) 24 F.(2d) 347, 348; Shamrock Towing Co. v. City of New York (C.C.A.2d) 16 F.(2d) 199; Wallace v. United States (D.C.Wash.) 16 F.(2d) 309, 313, affirmed (C.C.A.9th) 18 F.(2d) 20. These authorities cannot be distinguished on the ground that the indemnitee received a greater benefit from the contract than in the case at bar; for the question is not one of consideration but of interpretation. But if such a criterion is to be appealed to, it is certainly unreasonable to think that these defendants, for the small benefit they would receive from having a crossing maintained at the steps, would agree to indemnify the railway against claims arising from the negligent operation of its trains over the crossing as distinguished from claims arising from the use of the crossing.

The unreasonableness of the interpretation contended for by the railway becomes apparent if it is applied to other situations. Suppose the lease had been applied to the use of an alleyway beside a station building, would any one contend that it indemnified the company against such a claim for damages as would arise if the company negligently dropped some article from an upper story of its station building against a person passing in the alleyway? Or suppose it had been applied to a warehouse built on the right of way, would any one contend that it indemnified the company against such a claim for damages as would arise if the truck of a customer of the warehouse were negligently struck by a train while crossing the track to go to the warehouse?

It is argued that, if paragraph 6 of the covenants is not construed to cover liabilities of this character, there is nothing for it to cover. There are several answers to this. In the first place, the rule is well settled that, where the language of a contract is clear, the rules of construction cannot be invoked to raise ambiguities to be resolved by them. In the second place, liability for injuries resulting from the maintenance and use of the steps is covered by the covenant, and this would seem to be a sufficient coverage for an indemnity agreement contained in a lease executed to guard against the acquirement of a right of way by adverse user. In the third place, the lease was a mere form contract and, if we are to look beyond the language to determine its meaning, we must consider the purpose which the indemnity provision would serve, not merely with respect to this particular lease, but as applied in the case of encroachments generally.

Instead of saying that such a covenant in a form contract covers claims arising out of the negligence of the company in this case because there is nothing else to apply it to, we should rather look to other structures to which such form lease would ordinarily be applied, and determine whether the covenant would have meaning as applied to such structures, without stretching its language to cover claims arising out of the indemnitee's negligence. In the case of warehouses, platforms, etc., constructed on a railway's right of way, there is a wide class of claims to which this covenant would be applicable; and it has never been supposed in such cases, so far as I am advised, to cover a liability arising out of the negligent operation of trains. I see no reason to give it that coverage in this case merely because the structure to which it happens to be applied here is not likely to give rise to claims of another character.

No rule is better settled than that the language of an instrument is to be construed most strongly against the person using it; and, if the plaintiff here intended that the defendants should indemnify it against claims for damages arising out of the operation of its trains, it should have said so in unmistakable language, and not have depended upon language in a general form of contract which no one would have thought of giving such meaning if it had been used to cover a warehouse or a cotton platform instead of a flight of steps at a crossing. To give it such interpretation in this case seems to me not only to work a harsh result, so far as these defendants are concerned, but to be contrary to the well-settled principles of construction to which I have adverted. It is not without significance that, in all the multitudinous litigation which has arisen over leases of this sort, no case can be found which extends the language of the indemnity covenant to cases of this character, where the claim sued on has arisen, not from the use made of the property leased, but from the negligent operation of the company's trains, over which the lessee has no control.