# Richmond

## W. N. HALL v. KATHERINE MACLEOD AND COLIN MACLEOD, JR.

November 27, 1950.

Record No. 3690.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan and Miller, JJ.

The opinion states the case.

*Elijah B. White*, for the plaintiff in error.

*Stirling M. Harrison,* for the defendants in error.

MILLER, J., delivered the opinion of the court.

Katherine and Colin MacLeod, Jr., instituted this action against W. N. Hall for alleged breach of contract. None of the parties demanded trial by jury and all matters of law and fact were submitted to the judge for determination. From a judgment rendered against him for $2393.16, W. N. Hall obtained this writ or error.

The proved facts and not the evidence are certified to this court. In such instance, no presumption as to the finding of the lower court exists for or against either party. Burk's Pleading and Practice, 3rd Ed., sec. 400, p. 752.

It appears that the evidence was reasonably developed and the cause fairly tried. It now becomes our duty to apply the law to the facts proved and enter final judgment upon the merits if the facts certified are such as to enable us so to attain the ends of justice. Sec. 8-493, Code, 1950. However, unless the judgment appears to be based upon erroneous inferences from the facts we should not disturb it. *Slaughter* v. *Tutt,* 12 Leigh (39 Va.) 147.

With omission of wholly immaterial matter, the facts certified are:

"That the plaintiffs owned a farm in Fauquier County, Virginia, and in the fall of 1947 contracted orally with the defendant, through the defendant's foreman and agent, one Charlie Ball, to construct a shed to shelter horses and other stock with a hay loft above on said farm, the construction thereof to be similar in general to that of a shed on the farm of some neighbors by the name of Archbold.

"Ball inspected the Archbold's shed and told the plaintiffs that he could follow the example of said shed and build a similar shed of the size that the plaintiffs wanted, which was 50' x 24'; that the said Ball as foreman and agent of the defendant during the winter of 1948 undertook and did

build a shed with the hay loft above, completing same during the month of March of said year;

"That the said hay loft was filled with baled green hay, baled by a pick-up baler, in the summer of 1948; and the said hay loft and building collapsed during August of that year; that the ground floor of the said shed was built of cinder blocks across both sides and the rear, while the front was left open. There were three vertical steel posts spaced at intervals of 12½ feet across the front. A wooden girder measuring 6" x 12" was strung across the front a distance of 50 feet rested on the three vertical steel posts in the front and the wall of the building in the rear.

"That upon the collapse of the building two of the aforesaid steel posts were pushed out in front of the building, one of them having been found about 50 feet from the building. The third post remained in place. None of the posts were bent. The wooden girders which ran from the front to the rear of the building were broken;

\* \* \* \* \* \*

" \* \* \* that the negotiations concerning the construction of said building were conducted by Colin MacLeod, Jr., on the part of the plaintiffs and Charlie Ball on the part of the defendant; that Colin MacLeod, Jr., knew nothing concerning architecture or construction and that Charlie Ball had been engaged in construction business for 25 years.

"That Colin MacLeod, Jr., requested Charlie Ball to use only three vertical upright supports along the front of the shed upon which to support the hay loft giving as his reason that other internal vertical supports would be hazardous to brood mares and other livestock bumping against same; and asked Charlie Ball if this could be done and Charlie Ball answered in the affirmative, stating that he could construct the building with the use of the three vertical supports and that it would stand up;

"That said vertical steel posts were not attached to the girders at their point of contact therewith nor were they attached at their base. That said posts each rested on an iron

plate on a square concrete block and at the top the girders rested on a similar iron plate which in turn rested on the steel posts;

"That defendant had constructed other buildings for the plaintiffs, among which were barns and hay lofts;

"That plaintiffs only used baled hay which the defendant knew;

"That the Michigan hip roof, as used on this building, is built in such a way that it results in the construction of a loft which has a larger cubic content than does a loft built with a slant roof which gives an inverted V-shaped appearance;

"That the building may have been constructed in a skillful and workmanlike manner to a certain extent, but it was not constructed in such a manner as would bear the capacity of the hay loft when full. * * * ."

Plaintiff in error insists (1) that the trial court was not justified in inferring that there was an implied warranty from the language used that the building would be substantial and reasonably fit for the purposes intended, i. e., housing of stock and storage to capacity with baled hay, and (2) that if such warranty was within the contemplation of the parties (a) Charlie Ball was without authority to make it, (b) but if so, there had been an acceptance of the completed building which constituted a waiver of all defects, if any, in its construction.

The contract is oral and the intention of the parties thus rendered more difficult to ascertain. Yet it must be sought from the facts proved and when ascertained, if it be not contrary to law then it must be given effect for it is the criterion by which their rights are measured and their obligations determined. *Moore* v. *Chesapeake, etc., R. Co.*, 159 Va. 703, 167 S. E. 351, and *Ashland* v. *Newman*, 163 Va. 500, 175 S. E. 724, 176 S. E. 470.

"In contracts of which no memorial is made and no writing required by law, it is doubtless true that where parties have made a bargain which both of them understand

in a certain sense, their intent (which at least has been made plain to one another) must be sought, however inadequately it may have been expressed." 3 Williston on Contracts, Rev. Ed. sec. 610, p. 1752.

Ascertainment of the intent of the contracting parties is the cardinal rule in the construction of agreements. To do that the court will put itself in the situation occupied by the parties and then look to the language employed, the subject matter and purpose of the parties, and all other pertinent circumstances. Occupying that status, it will apply the language used to the subject matter and object sought to be accomplished and so judge and determine its meaning. *Eppes* v. *Eppes,* 169 Va. 778, 195 S. E. 694, *Moore* v. *Chesapeake, etc., R. Co., supra,* and *Ashland* v. *Newman, supra.*

Here the facts show that W. N. Hall's foreman, a builder of 25 years experience, was not only to erect the building, but he was designated and entrusted with authority to enter into the contemplated contract and therefore necessarily to agree upon its terms. Yet it is argued that because he was not an architect no reliance upon or effect can be given to his assurance that if the internal supports were eliminated "he could construct the building with the use of the three (front) vertical supports and that it would stand up."

Plaintiff in error and his foreman were aware of the landowner's purpose and the structure's intended use. It can hardly be doubted that after inspection had been made of the neighbor's building and discussion had concerning the sufficiency of the three upright supports along the front, the statement "that it would stand up" meant that it would serve the purposes intended without internal supports and that assurance became an integral part of the oral contract as finally agreed upon.

We know from actual experience that erection of many farm buildings such as ordinary stock shelters and hay mows is accomplished without architectural aid. In

fact, in such simple and unadorned structures symmetry and architectural design are often not so important as sturdiness of structure which should be and is readily determinable by a competent and experienced builder and contractor. To infer from the facts proved in the light of the objective sought that the actual contract was to erect a building with superstructure sufficiently sturdy and workmanlike to support the loft when filled with baled hay was, we think, intended by the parties and is shown to have been undertaken by the contractor. That he so undertook is made further evident by the fact that the shape of the hayloft was such as to actually enlarge its cubic capacity. It is thus disclosed that the obligation on his part was to so construct the lower portion of the building as to support a greater load than would otherwise have been permitted by a different shaped loft. To now say that the statement "it would stand up" only meant that the building would stand after its erection, but did not mean that it would stand after the loft was filled with hay, would render the assurance meaningless. It would then serve solely as a trap for the inexperienced and unwary.

We conclude that the statement that the building "would stand up" without the internal vertical supports constituted a term of the contract. Thus to that extent it represented the agreed specification to be followed. It also amounted to an undertaking on the contractor's part that when so completed the building would answer the purposes intended. That it did not do. We, therefore, find that there has been a failure to fulfil the undertaking and a breach of the implied warranty that the building would be reasonably fit to serve its intended purposes.

"The contractor's liability is fixed by the terms of his contract. He is liable to perform according to those terms." 9 Am. Jur. Building and Construction Contracts, sec. 27, p. 19. See also Wait's Engineering and Architectural Jurisprudence, sec. 241, p. 221, and 17 C. J. S., Contracts, sec. 515, pp. 1107, 1108.

Pertinent is the recent case of *Mann* v. *Clowser*, 190 Va. 887, 59 S. E. (2d) 78, wherein Mr. Justice Eggleston quotes with approval from 17 C. J. S., Contracts, sec. 329, p. 781:

"In building and construction contracts it is implied that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose." (190 Va. at p. 901.)

Nor do we think that Charlie Ball, who was designated and empowered by W. N. Hall to enter into and execute the contract on his behalf was not empowered to agree that he would erect a structure that would serve the purposes desired. From the inception of this transaction the purpose of his agency was to contract for and build a stock shelter and hay loft to meet the needs of the landowners. To do that we think necessarily implied authority to bind his principal to properly erect a structure sufficiently sturdy to serve the purpose for which it was to be used. To hold otherwise would so limit his authority as to negative his right to reasonably and justly contract at all.

Defendants in error were unlearned and inexperienced in building construction. They were assured by the builder of many years experience that the internal supports were not needed, and because of his superior skill and knowledge in that respect they relied upon his assurance. The defect or insufficiency of the supports was not patent. Being inexperienced, they were not apprised of the weakness and defect until the building collapsed. By paying the contractor and using the building for some months for housing stock, they did not unconditionally accept it and thus waive their right to complain when its latent defect was brought to light.

"One can never be said to waive his rights unless he knows what his rights are at the time of the alleged waiver." *Muhleman & Kayhoe* v. *Marks*, 168 Va. 81, at p. 90, 190 S. E. 86.

The judgment is affirmed.

*Affirmed.*