### GILMARTIN et al. v. PRINCETON BANK & TRUST CO.

No. 3892.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1935.

Francis S. Bensel, of New York City (T. S. Clark, Henry P. Butts, and Mac-Corkle, Clark & MacCorkle, all of Charleston, W. Va., on the brief), for appellants.

John R. Pendleton and H. E. DeJarnette, both of Princeton, W. Va. (W. S. Dangerfield, of Princeton, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment entered in the District Court of the United States for the Southern District of West Virginia, at Bluefield, in an action at law instituted by the appellants, herein referred to as the plaintiffs, copartners doing business under the firm name and style, of Charles E. Quincey & Co., against the appellee, herein referred to as the defendant, a banking corporation of Mercer county, W. Va. The action was instituted by notice of motion for judgment seeking to recover the sum of $24,554.12, damages for breach of a contract alleged to have been entered into between the plaintiffs and the defendant for the sale of certain Home Owners' Loan Corporation, 4 per cent. 1951 bonds. The defendant filed a plea of general issue to which the plaintiffs replied generally. A trial was had in January, 1935, and the jury returned a verdict in favor of the defendant. A motion to set aside the verdict was overruled by the trial judge and judgment entered, from which action this appeal was brought.

The plaintiffs are dealers specializing in United States Government securities with their principal office in New York City, N. Y., and a branch office at Cincinnati, Ohio. On September 1, 1933, they sent out a circular letter to the defendant stating, among other things, that they, as dealers, expected to be active in Home Owners' Loan Corporation bonds in the near future. On September 11, 1933, J. C. Meador, cashier of the defendant bank,

wrote to the New York office of the plaintiffs, stating that the defendant was interested in their circular letter and informed plaintiffs that the bank expected to handle around $500,000 face value of these bonds. On October 21, 1933, defendant wrote the plaintiffs asking for an offer on $50,000 of Home Owners' Loan bonds and plaintiffs' Cincinnati office replied to this letter on October 23, giving the market quotations on the bonds and inviting the defendant to communicate further with that office. On November 6, 1933, Meador talked over the telephone with one H. H. Banker, the resident partner of the plaintiffs, at Cincinnati, and discussed the sale of said bonds, stating that the defendant expected to have issued to them a total of $250,-000 of the bonds. Meador stated to Banker that applications were filed by the defendant for a large amount of bonds, and that the applications would be finished up right away. In his evidence, given at the trial, Banker testified that Meador stated in this conversation that these bonds were to be obtained from applications filed by the defendant with the Home Owners' Loan Corporation, and that the defendant was getting the bonds in that manner. Later that same day, Banker, after having consulted with the New York office of the plaintiffs, called Meador on the telephone and made an offer of 84 cents on the dollar, with interest to November 8, 1933. It was also testified that there was another conversation that day between Meador and Banker at which Meador informed Banker that he had consulted other officers of the defendant and would accept the offer.

On the same day, November 6, 1933, the Cincinnati office of the plaintiffs wrote the following letter to the defendant:

"Chas. E. Quincey & Co., Cincinnati, Ohio

"November 6, 1933.
"Mr. J. Meador, Cash, Princeton Bk. & Tr. Co., Princeton, W. Va.

"Dear Mr. Meador: We take pleasure in confirming our purchase from you today of $250,000 Home Owners' Loan Corporation 4s 1951 at 84 and interest to November 8th, for delivery through the National City Bank of New York as soon as possible.

"Interim receipts as you understand, constitute a good delivery when properly endorsed, and in the event the interim receipts are registered in the name of a bank or corporation the following papers are necessary.

"1. Resolution bearing corporate seal showing authority of signing officer to sell, assign and transfer.

"2. Certificate of incumbency of office for the signing officer.

"Please be assured that we appreciate this favor, and want you to feel free to wire, write or phone us for markets at our expense, whenever you are interested.

"Very truly yours,
"Chas. E. Quincey & Co.
"[Signed] H. H. Banker,
"HHB:CB  Resident Partner."

The following inclosure was in this letter.

"Chas. E. Quincey & Co.
"Cincinnati, Ohio 11-6-33.
"Princeton Bk. & Tr. Co.,
"Mr. J. Meador, Princeton, W. Va.

"We confirm the following purchases made from you today
$250,000 Home Owners Loan Corporation 4s 1951

| | | |
|---|---|---|
| JJ-1 | 84 net DD | 210,000.00 Prin. |
| (Int. to 11-8) | | 3,527.78 Int. |
| | | $213,527.78 |

"Natl. City NY int. to Weds. 11–8
"By: CB. Chas. E. Quincey & Co."

On November 11, 1933, the defendant began the delivery of the bonds and on that date forwarded to the plaintiffs a letter inclosing a copy of the resolution of its board of directors, adopted on November 7, 1933, authorizing the sale of these bonds, which letter and resolution read as follows:

"November 11, 1933.
"Mr. H. H. Banker, Resident Partner, 502 First National Bank Building, Cincinnati, Ohio.

"Dear Sir: We enclose herewith certified copy of the minutes of the meeting of the Board of Directors electing the officers, also certified copy of the minutes of the meeting authorizing us to make sale of the Home Owners' Loan Corporation bonds, and copies of our letters forwarding our first deliveries.

"Very truly yours,
"JCM:MK  J. C. Meador, Cashier."

"Be it resolved that the President, Vice President or Cashier of this corporation be and they are hereby authorized, empowered and directed to sell the bonds or Interim Certificates being issued to this bank by the Home Owners' Loan Corpo-

ration at the market price, and are hereby authorized to make the necessary assignments of the Interim Certificates to secure their transfer to the purchaser.

"We hereby certify that the foregoing is a true and correct copy of a resolution regularly presented and adopted by the Board of Directors of Princeton Bank & Trust Company at a meeting duly called and held at Princeton, West Virginia, on the 7th day of November, 1933, at which a quorum was present and voted, and that such resolution is duly recorded in the minute book of this corporation.

"[Signed]   W. D. Shuff,
"Vice President of Princeton Bank & Trust Company.
"Attest:  J. C. Meador, Secretary."

Later, at the request of the plaintiffs, another resolution was passed by the board of the defendant bank in order to comply with the requirements of the Treasury Department. Shortly after the telephone conversations and the letter of November 6, the time being fixed by Banker in his evidence at about two weeks and by Meador in his evidence at a few days, it developed, in a telephone conversation between the two, that Meador objected to the letter of November 6th, stating that the bank was selling only the bonds issued to it on its applications.

Between November 6, 1933, and July 25, 1934, the defendant bank delivered to the plaintiffs bonds of the par value of $122,825 and on September 4, 1934, defendant delivered to the plaintiffs additional bonds of the par value of $1,075. This was the final delivery of bonds made by the defendant.

On April 27, 1934, the Home Owners' Loan Act of 1933 was amended in certain respects (48 Stat. 643), and the government ceased the issuance of its 4 per cent. 1951 bonds except upon applications which had been accepted prior thereto. Under the amended act, the rate of interest was changed; the government guaranteed the principal as well as the interest on the Home Owners' Loan Corporation bonds and certain provisions were made for exchanging bonds. The value of the bonds increased in the open market, after the amended legislation, and on October 15, 1934, defendant wrote the plaintiffs definitely advising them that it had delivered all of the bonds that would be issued to it, under applications approved, and that it would not deliver any more bonds un-

der the arrangement between the parties. The damage claimed by the plaintiffs was the difference between the contract price and the market price on August 1, 1934, together with interest, of the undelivered bonds.

In the course of the transaction, the senior partner of the plaintiffs came to the defendant bank and went over the records showing the applications for the bonds, and an employee of the bank testified that, at that time, the senior partner of plaintiffs stated that he would assist in getting delivery from the Home Owners' Loan Corporation, as he had influence in Washington, and in March, 1934, the senior partner called on the state manager of the Home Owners' Loan Corporation in Charleston, W. Va., and endeavored to expedite the work of closing the applications for the defendant. The bonds were secured by the defendant through applications of its customers, and it is apparent that but for the change in legislation the amount of bonds defendant expected to secure, at the time of the arrangement with the plaintiffs, would have been secured by them.

The only question involved is whether the letter of November 6, 1933, from the plaintiffs to the defendant, constituted the entire contract between the parties, or whether the letter, taken together with the conversations on November 6th between Meador and Banker, the subsequent resolution of the board of directors of the defendant, and other circumstances, showed that the defendant intended to sell to the plaintiffs only such bonds as it would receive from the Home Owners' Loan Corporation on its applications.

It is the contention of the plaintiffs that the contract of November 6, 1933, was not conditioned upon the delivery of the bonds to the defendant in liquidation of loans wherein it was the actual mortgagee. The contention of the defendant is that the contract of November 6th intended only to deal with such bonds as might be delivered to defendant on applications made by it. The trial judge, in his charge to the jury, instructed to the effect that the question of what the real contract between the parties was, was a question of fact for the jury, and in our opinion the instructions were correct.

The agreement between the parties was the result of telephone conversations as

to which there is a direct conflict in the testimony of the various witnesses, and unless the letter of November 6, 1933, is held to have included the entire contract, then there was a question of fact to be decided by the jury.

"Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury." Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 233, 74 L.Ed. 720.

A study of the record leads us to the conclusion that the judge not only properly instructed the jury, but that the jury reached a correct verdict. The plaintiffs must have known that the defendant, a country bank, was not intending to speculate in the Home Owners' Loan bonds, that it agreed to sell, and did not intend to go into the market and buy bonds to be delivered at the price agreed upon, but intended to sell only such bonds as were allotted to it on the applications made in liquidation of loans wherein it was the actual mortgagee. That the defendant intended to sell to the plaintiffs only such bonds as it received in due course of the transactions pending seems evident not only from the testimony in the case, but from the written evidence, the correspondence between the parties. Had there been no change in legislation, the defendant would have received more than the amount of bonds mentioned in the contract between the parties, but when Congress amended the Home Owners' Loan Corporation Act, the method of operation in the issuance of the bonds was completely changed, and the defendant was prevented from delivering to the plaintiffs as many bonds as it expected to have issued to it. That the defendant intended to sell only bonds issued to it also seems evident from the resolution of the board of directors of the defendant, which resolution states specifically that the sale of "bonds or interim certificates being issued to this bank" was authorized. Members of the plaintiffs' firm, that conducted the negotiation, must have known that Meador, the cashier, would have to be authorized by a resolution of the board of directors to make the sale, and such resolution is mentioned in the letter of November 6th. When the resolution was passed and forwarded to the plaintiffs, its plain meaning was that the bank was selling only the bonds issued

to it, and was not expected to make purchase of the bonds as a matter of speculation. The plaintiffs accepted delivery, in part, of the bonds under this resolution without any immediate protest. These circumstances, together with the evidence on behalf of the defendant, make the inference inescapable that the defendant bank was agreeing to sell only such 4 per cent. 1951 bonds as it received on its applications. The bank did deliver to the plaintiffs all of the 4 per cent. 1951 bonds that it received and complied with its contract.

It is contended on behalf of the plaintiffs that the trial court was in error in charging the jury to the effect that they should find the intent of the parties in making the contract. We do not think so. Where a contract, as this one, is made partly over the telephone and partly by correspondence, it is proper that the jury should find the intent of the parties at the time the contract was made. A fundamental rule in the construction of agreements, where there is uncertainty, is to ascertain the intent of parties, and in order to do so courts look to the language employed, subject-matter, and surrounding circumstances. Town of Ashland v. Newman, 163 Va. 500, 175 S.E. 724.

Numerous cases relied upon on behalf of the plaintiffs are cases in which there is no ambiguity with regard to the contract. Here the construction of the contract contended for by the plaintiffs was, to say the least, very uncertain.

Great stress is laid by the plaintiffs upon the words "as soon as possible" used in the letter of November 6, 1933, but the plaintiffs knew how the defendant was getting these bonds, and the evidence shows that all of the 4 per cent. 1951 bonds were delivered by the defendant when received. It is further contended on behalf of the plaintiffs that after the amendment by Congress of the Home Owners' Loan Corporation Act, the defendant could have exchanged the bonds received by it and made delivery; we do not think the defendant was required to do this under the terms of the agreement that it entered into.

An examination of the charge of the trial judge does not disclose any error, and the judgment of the court below is accordingly affirmed.