# Richmond

## MUHLEMAN & KAYHOE, INC. *v.* ESTELLE, SALLIE AND ANNA MARKS.

March 11, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Scott, Lloyd & Scott,* for the plaintiff in error.

*R. E. Booker* and *David Meade White,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error by this proceeding is asking that a judgment for $525 be set aside. It was rendered in the court below upon the verdict of a jury, which was against the plaintiff in error and in favor of the defendants in error.

Three sisters, Misses Sallie, Estelle and Anna Marks, owned a lot on Seminary Avenue in the city of Richmond. They decided to have a dwelling, to be used as their home, erected on the lot and for that purpose they entered into a written contract with Muhleman and Kayhoe, Inc., builders and contractors. The contract was made on April 8, 1933, and it provided that certain plans and specifications should be a part of it. The plans called for the erection of a two-story house with a basement five and a half feet below the surface of the ground. It was provided in the specifications that the house should be connected by a lateral sewer line to the public sewer in an alley at the rear of the lot.

Under the heading "Plumbing and Drain," this provision was in the plans: "Work to be done in accordance with established custom and must comply with all local ordinances and requirements. Cast iron pipes must be perfect. Lay 6″ terra cotta sewer and connect with sewer at the property line, or in the alley. * * * * Connect this with house drain 3′ 0″ outside of the walls of the house with 6″ cast iron pipe * * * * and to connect with the main drain which will be laid in trench under the cement underfloors."

It is upon the alleged breach of this provision of the specifications that the plaintiffs founded their action for damages. While excavating for the basement it was discovered that the public sewer in the alley was only about five feet below the surface of the ground and that it would be impossible to drain the sewage from the house into it if the basement was to be five and a half feet below the surface. The plaintiff in error who will be referred to as the contractor, through Mr. Kayhoe, one of its officers, immediately notified the defendants in error, hereinafter designated as the owners.

At the time the contract was made and the plans and specifications drawn up with the contractor neither the owners nor the contractor knew that the public sewer was only about five feet below the surface.

It is the established good practice in the community where the house was to be constructed for lateral sewers running from dwelling houses to a public sewer to have a fall of ¼ of an inch to the foot. Of course, this was impossible because the basement floor under which the sewer and drain pipes were to be placed was lower than the public sewer pipe in the alley. This being true it became necessary to change the plans for the "Plumbing and Drains."

The plans and specifications were made by an architect in the employ of the contractor. The owners, who were inexperienced in such matters, had no supervision over him.

When it became obvious that it would be impossible to follow the plans and connect the lateral sewer from the house with the public sewer and still preserve the customary fall, the contractor, through Mr. Kayhoe, suggested ways

of meeting and overcoming the difficulties, which existed by reason of the shallowness of the public sewer for which neither the contractor nor the owners were responsible. It was suggested that the house might be raised a sufficient height in order that the proper fall for the lateral sewer might be attained. This suggestion was not approved because it entailed additional cost and also because the house would be elevated to such an extent that the architectural appearance would be partially destroyed. It was then suggested that the basement might be excavated to the depth required by the plans and the basement toilet and drain eliminated and an electric pump installed which would pump the water out of the basement when it would accumulate there. This also entailed additional cost and was not approved. Mr. Kayhoe then suggested and *recommended* a third plan which he stated, according to Miss Sallie Marks, would give the owners a dry basement at all times. Under this plan, which carried no additional charges for the changes, it was proposed to eliminate the drain in the floor of the basement as shown on the original plans and install one of a different kind in the wall. It was also proposed that the basement toilet be raised nine inches to prevent the water from backing into the basement from the public sewer and to raise the lawn nine inches. Under this proposal Mr. Kayhoe testified that it included a change in the fall of the lateral sewer from $\frac{1}{4}$ of an inch to the foot to $\frac{1}{8}$ of an inch to the foot, but Miss Sallie Marks was positive in her testimony that no such change was ever suggested and certainly never agreed to by her nor her sisters and from the verdict in favor of the owners we must accept her statement of it.

The last proposal was left with the owners and they desired time to consider it. After a few days, according to Mr. Kayhoe, the proposal was accepted and the contractor proceeded with the excavation and with the changes in the plans. After the work progressed the owners complained that the basement floor did not properly drain. To meet this situation other changes were made. The basement floor was raised, a hole was made in the wall and a pipe installed

to drain the water out of the basement into an area outside where it would be turned into the sewer.

In August, 1933, the owners moved into the house. On August 23rd there was an unprecedented rain and the water came into the basement attaining a depth of 18 inches. This water backed up from the sewer. The owners became very much perturbed over the water in their basement and immediately called the contractor. Mr. Kayhoe appeared and he saw the great volume of water in the basement. According to the testimony of the owners, he suggested other changes which were carried out and he promised that they would eliminate the water, but they did not. The difficulty has never been completely eliminated for water still backs up into the area-way. This is denied by Mr. Kayhoe.

In the latter part of September, 1933, about one month after the owners moved into the house a settlement for it was made in accordance with the terms of the contract. Certain work was performed after the settlement. The new line to drain the area-way was installed afterwards and the contractor after that time cleaned the sewer of wood blocks that had been thrown in it. In the following January or February, 1934, the ditch in which the lateral had been placed was opened and it was found that a four inch city gas main was lying parallel to the sewer and about six or seven feet from it. This gas main was between the public sewer and the house and the lateral sewer had been laid over it and thus the fall of the lateral from the house to the gas main had been reduced to 1/32 of an inch to the foot. This fact was not discovered until the ditch had been opened, but the employees of the contractor knew of it in May, 1933, when the lateral sewer was laid. At the time the ditch was opened there was some water on the basement floor but it drained out after the blocks of wood had been removed from the lateral sewer.

Engineers viewed the lateral sewer after it had been uncovered and one of them suggested a plan for the correction of the difficulty. Under his plan, which was submitted to the jury, he testified that water would be eliminated from

the basement. It would cost, according to this expert, $525 to make the necessary changes. This witness testified that there was not sufficient fall in the lateral sewer.

Another engineer called by the contractor testified that the fall of the sewer from the gas main to the house is only 1/32 of an inch to the foot and that the fall is not sufficient.

The owners instituted an action against the contractor for damages for constructing the lateral sewer with so little fall that water backed from the sewer into the basement. The breach alleged in the declaration is this: "That the said defendant did not lay and make a proper sewer from the said dwelling house or building to the sewer in the alley in the rear of the said dwelling house or building, and did not make proper sewer connections from the said house or building with the sewer in the rear alley, and the said sewer and connections were not constructed in the manner provided for in the plans and specifications, and as the result thereof water backed up in the basement and area-way of the said dwelling house."

The contractor filed a plea of the general issue and at the trial asserted as its defense that the water backed into the basement as a result of the insufficiency of the public sewer and not as a result of any defect in the construction of the lateral sewer; that the plans and specifications had been followed as far as the location of the public sewer and the gas main would permit; that the owners had been furnished sufficient sewer facilities so far as the sewage from the house was concerned; therefore, the departure from the specifications did not occasion the damage and finally, that the owners were aware of the defect of which they now complain at the time they made the final settlement for the house and by it they accepted the entire work as satisfactorily completed.

Five instructions were given and three offered by the contractor refused, to which proper exceptions were taken. The jury returned its verdict in favor of the owners and the court refused to disturb it.

It was assigned as error that the court refused to set aside

the verdict and enter judgment for the contractor; that instructions 1, 2 and A given on behalf of the owners were incorrect; that instructions 1, 2 and 3 offered by the contractor should have been given; that a new trial should have been awarded for the misdirection of the jury, and that the verdict was excessive.

The main issue before the trial court was (a) whether the backing of water in the basement was due to the improper construction of the lateral sewer or (b) whether it was due alone to the insufficiency of the public sewer. For the former the contractor was liable and for the latter it was not.

The contractor maintained in the court below and urges here that it was only obligated to furnish adequate sewer facilities for the discharge of the sewage and drainage originating in the house and its counsel reiterates that the evidence is uncontradicted that this obligation was performed and that the sewer and drainage facilities were adequate for that purpose.

The owners maintained in the court below and here that they were entitled to have the lateral sewer constructed with sufficient fall to insure them that the water would not back into the basement and that they would have a basement free of water; that the water backed into the basement through the lateral sewer and that if it had been constructed with a fall of ¼ of an inch to the foot as agreed upon instead of 1/32 of an inch to the foot water would not back into the basement. They also maintain that, when it became apparent that the sewer in the alley was laid so near the surface that a proper connection supplying a sufficient fall could not be accomplished unless the house were raised or the drains and toilet in the basement changed, they agreed to the latter plan upon the assurance that they would then have a basement free of water, but that they never agreed to a reduction in the fall of the lateral. They claim that the water still backs up from the sewer.

With the respective contentions of the parties before it,

the trial court instructed the jury by instruction 1, that under the contract the contractor agreed "to connect said house to the sewer in the alley * * * * so as to furnish the plaintiffs with adequate sewage facilities under all the conditions then existing."

Instruction 2 told the jury that if they found for the plaintiffs they could allow such sum as damages as the jury believed from the evidence it would cost the plaintiffs to secure adequate sewer facilities under all the circumstances. It instructed the jury by instruction A that if the contractor "has connected said house to the sewer in the alley * * * * so as to furnish the plaintiffs with adequate sewer facilities under all the conditions shown in the evidence then the defendant has complied with its contract * * * *."

It instructed the jury by instruction B that if the "defendant, before erecting the lateral sewer as it now exists and as it is now connected to the public sewer * * * * explained to the plaintiffs that such lateral sewer would be so erected and connected, and that the plaintiffs agreed to such plan of construction, then the jury should find for the defendant."

And finally the court instructed the jury by instruction C that the "defendant cannot be charged with any defect which the jury may believe from the evidence may exist in the public sewer * * * * due to its size, depth, or any other structural condition."

The attorneys for the contractor interposed an objection to instruction 1. They asserted that the contract did not require the contractor to furnish adequate sewer facilities *under all the circumstances;* that it was only required to furnish adequate sewer facilities to carry away sewage that originated in the house and that if the owners do not have sufficient sewer facilities it is due solely to the insufficiency of the public sewer and the gas main in the alley. The same objections were urged to instructions 2 and A, and in addition it was stated that the plaintiffs suffered no damage from the alleged failure of the defendant to construct the lateral sewer according to the specifications.

The court refused instructions 1, 2 and 3, offered by the contractor. Instruction 3 was in substance the same as instruction C which was granted; therefore, it was not error to refuse it.

By instruction 1, offered for the contractor and refused, it was sought to tell the jury that they should find for the defendant even though the plans and specifications had not been followed in constructing the sewer unless the failure to follow them was the cause of the damage and the instruction concluded by stating that there was no evidence that the plaintiff suffered any damage from a failure to follow the plans and specifications.

By instruction 2, which was also refused, the jury would have been instructed to find for the defendant if the plaintiffs by their settlement and their occupancy of the house accepted the work as satisfactory, if they had knowledge that there were defects at the time.

Instruction 2 was properly refused because the owners did not know at the time settlement was made that the water would still back into the basement. In fact, Mr. Kayhoe told them, according to their testimony, that the lateral sewer and the drainage had been fixed and led them to believe that water would not again accumulate in the basement. One can never be said to waive his rights unless he knows what his rights are at the time of the alleged waiver.

We have previously set forth the objection the contractor made to instructions 1, 2 and A which were given. For the sake of clarity we will again refer to the declaration, the plans and specifications and the changes in the specifications made necessary by the shallowness of the public sewer. The declaration charged that the contractor did not construct a proper lateral sewer; that it did not make proper sewer connections and that the same was not constructed in accordance with the plans and specifications and as a result thereof water backed up in the basement and areaway. The specifications provided that the work was to be done in accordance with the established custom, which meant that there must be a fall in the lateral of $\frac{1}{4}$ of an inch to

the foot and it was required to be connected with the public sewer. The floor of the basement being lower than the public sewer, it was impossible to give the lateral a fall of ¼ of an inch to the foot. Therefore, it became necessary to change that particular provision of the specification. The change was made and the contractor assured the owners according to their testimony that thereafter the basement would not have accumulations of water from the sewer. There was testimony tending to show that water continued to back into the basement and area-way after the changes had been made, and that lack of sufficient fall in the lateral was the cause. When the court gave instruction 1, we think it properly told the jury that the owners were entitled to "adequate sewage facilities under all of the conditions then existing,"—that is, under the original plans and specifications and under the changes that were made necessary. It was imperative that the court in the instruction should take some notice of the partial departure from the specifications. What has been said is also applicable to instruction A. We find no reversible error in these instructions.

Instructions B and C were given without objection. The court told the jury in instruction B that if the plaintiffs (owners) agreed to the plan of construction and connection of the lateral after it had been explained to them, then they should find for the contractor. This instruction was given on account of the testimony of Mr. Kayhoe who insisted that the changes had been agreed upon and accepted. The jury, however, did not accept his statement.

Instruction C told the jury that the contractor was not responsible for any defects that existed in the public sewer. The jury evidently did not think the public sewer was the cause of the trouble.

We think that the contractor, under the contract, plans and specifications, and under the supplemental agreement which provided for the change of the specifications regarding the floor, drain, and toilet in the basement, was obligated not only to furnish adequate sewer facilities to

carry off the sewage originating in the house but that he was also obligated to furnish such facilities as would be adequate (that is, have sufficient fall) to prevent water from backing in the basement from the sewer.

According to Mr. Kayhoe, as related before, the owners agreed to a change in the fall of the lateral from ¼ of an inch to the foot to ⅛ of an inch to the foot. This is denied by the owners. However, when the actual fall was checked by an engineer employed by the contractor for that purpose it was disclosed by his testimony that the contractor did not provide a fall of ⅛ of an inch to the foot as it claimed it agreed to do, but it provided a fall of only 1/32 of an inch to the foot which it is agreed by the expert witnesses is insufficient to provide proper sewer facilities.

It is argued, however, that the sewer as constructed is sufficient and that the lack of fall in the lateral does not cause the water to back up, but that it is caused entirely from the insufficiency of the public sewer. The answer to this is that there is testimony from which it might reasonably be concluded that the failure to give the lateral sewer greater fall does produce or efficiently contributes to produce the undesirable result. In other words, if the fall had been ¼ of an inch or even ⅛ of an inch to the foot, the jury might have concluded that the water would not have backed in the basement.

It might be argued that the sole allegation in the declaration embraced a charge that the sewer was not constructed in accordance with the plans and specifications, that that failure resulted in the backing of the water into the basement, and that the evidence is conclusive that it was not constructed according to the plans. However, no point is made of the variance between the allegation and the proof. Both parties concede that the physical surroundings compelled a departure from the plans and if the variance had been brought to the attention of the court no doubt it would have been cured by proper amendment.

There is no merit in the assignment that the damages are excessive. This point was not insisted upon in oral

argument nor in the petition and brief filed by the attorney for the contractor.

Upon a consideration of the entire case, we are of opinion that substantial justice has been done and that the judgment should be affirmed.

*Affirmed.*