# LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Stern Realty Corp. et al.

v.

Jacob M. Van Doren etc.

June 19, 1967

By JUDGE A. CHRISTIAN COMPTON

Attached you will find a copy of the judgment order entered today in favor of the plaintiffs in the amount of $4,215.50 with interest thereon at six per centum per annum from September 1, 1962.

This action, in two counts, is brought on a contract for the construction of gravity sewers in the West End Manor subdivision in Henrico County, Virginia. Count II of the Amended Motion for Judgment is without sufficient evidence to support it and is therefore dismissed.

Under Count I, the plaintiffs seek recovery in damages as a result of alleged defective construction of one of the units of the sewer system, sewer manhole 34 (hereinafter referred to as "the manhole").

The contract in question is dated July 21, 1961, and includes the basic agreement (P-1), the plans entitled West End Manor Gravity Sewers (P-3), and Current Henrico County Specifications (P-2). Unless otherwise stated, all future references to "the contract" will include the above three documents. Reference to each document separately will be by "agreement," "plans," or "specifications" as the case may be. The contract incorporates the contractor's Proposal but this document was not offered in evidence.

The plaintiffs assert that upon completion of the work provided for in the contract, Henrico County issued a tentative approval of said work and the defendant was paid the contract price and an additional sum for extra work. Thereafter the manhole tilted prior to final approval thereof by the engineer under the contract or by the county and one of the plaintiffs was directed to replace it with a new manhole. Following the defendant's refusal to replace the manhole, the plaintiffs proceeded to have the work done and they bring this suit to recover the alleged loss suffered due to the reconstruction of the manhole.

The defendant agrees that the documents referred to above constitute the contract between the parties and admits the receipt of payment from the plaintiffs. He asserts, however, that the evidence fails to show his noncompliance with the contract terms. He maintains that the facts do not show that the cause for the reconstruction of the manhole was the result of any failure on his part. Furthermore, the defendant says, by making the payment to him, the plaintiffs have waived all claims that might be made by the plaintiffs against the defendant pursuant to paragraph 2-A-a of the agreement. The defendant also contends that the contract is not ambiguous and that in construing it, the court should not search beyond the instrument itself for the meaning of its terms.

The function of the court is to construe the contract made by the parties and not to make a contract for them or to alter the contract they have made so as to conform it to the court's notion of the contract they should have made in view of the subject matter and the surrounding facts and circumstances. *Ames* v. *American Nat. Bank*, 163 Va. 1, 38 (1934). "The pole star for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used*. The court may and should, as an aid to the interpretation of the words used, take into consideration the subject matter, the facts and circumstances surrounding the parties when they entered into the contract, and the purposes for which it was made. But it is not at liberty, because it has acquired a knowledge of those facts, to put a construction on the words the parties have used which they

*do not properly bear.* It is the court's duty to declare what the *instrument itself* says it says.

> "The contract is to be construed as a whole, and effect given to every provision thereof if possible. No word or paragraph can be omitted in construing the contract if it can be retained and a sensible construction given to the contract as a whole." No word or clause is to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it; and no word or clause should be discarded unless the other words used are so specific and clear in contrary meaning as to convincingly show it to be a false demonstration.
>
> When two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done. The presumption always is that the parties have not used words aimlessly and that no provision is merely a superfluity unless it is plainly merely a repetition.
>
> Words used by the parties are to be given their usual, ordinary and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it. 163 Va. 38, 39.

See also *Richmond Eng. Corp.* v. *Loth*, 135 Va. 110, 140, et seq. (1923). The lawful contract between the parties which is free from doubt and ambiguity furnishes the law which governs them. 4 M.J. *Contracts*, p. 375.

The contract in this case is not free from ambiguity. Paragraph 1-A of the agreement contains no object of the verb "completing." That paragraph does not state that the defendant is to complete the "work" described in the plans and specifications. The "final payment" referred to in Paragraph *2-A-a* is an expression which is open to various interpretations. The phrase lacks clearness and

the words carry a double meaning under the circumstances of this case. *Ayers* v. *Harleysville Mut. Cas. Co.*, 172 Va. 383, 393 (1930). The same observations may be made of the term "Trench Excavation." Specifications, Section 7.11-10. Because of this, the court must look to other evidence to explain the terms of this contract.

Applying the above rules, but being mindful that doubtful and ambiguous language must be interpreted most strongly against the plaintiffs who drafted the agreement and plans, the court is of the opinion that the true meaning of this contract as its terms relate to the issues of this case is as follows:

> The defendant promises to furnish all materials, equipment, tools, skill and labor necessary to completing in a good, firm, substantial and workmanlike manner, the work in connection with the construction of the manhole in strict conformity with the true intent of the plans and the specifications. The plaintiffs promise to pay the defendant for said work, when completed in accordance with the provisions of the contract, the stated contract price, subject to additions and deductions provided therein, for the authorized work complete in place and tentatively approved by Henrico County. Paragraph 7.11-10 of the specifications relating to "Trench Excavations" does not refer to the excavation required to construct this manhole.

> The defendant's work is subject to the inspection and approval of J. K. Timmons, Engineer, and the County of Henrico. ("Subject to" is defined as "dependent upon" or "being under the contingency of." Websters New International Dictionary, Second Edition.) The said Engineer's decision upon any question connected with the execution of the contract or of any failure or delay in the prosecution of the work shall be final and conclusive.

> Prior to final inspection by the county, the defendant is responsible for uncovering all sewer manholes after surface treatment of the roads and for adjusting them to final road

grade, if necessary. He shall also be responsible for cleaning out sewer mains for final inspection, if such cleaning is necessary. The price for performing any extra work should be shown on the bid and payment for this work will be on the unit prices given by the defendant in his Proposal.

All sewer lines, structures and appurtenances shall be thoroughly cleaned and maintained in working condition until final acceptance by the county.

A guarantee of materials and workmanship for a period of one year from the date of acceptance by the county shall be required on all work.

The making and acceptance of the final payment made after the final inspections performed by the Engineer and the County shall constitute a waiver of all claims by the plaintiffs against the defendant, and a waiver of all claims by the defendant against the plaintiffs.

The court is of the opinion that the evidence discloses the following to be the facts of this case.

On July 21, 1961, the parties executed this contract and work in the area was begun three days later and completed on August 21, 1961. During this period the manhole in question was constructed in "bad ground" which was wet, muddy and sandy and described as "running sand." Without setting forth the detail as to the manner of the construction of manhole 34, it is sufficient to say that competent expert witnesses (Sayre, Timmons and Watkins) disagreed as to whether, considering the condition of the ground, the manhole was constructed in a substantial and workmanlike manner. The court accepts the testimony of Timmons, for the defendant agreed that the county and Engineer Timmons should make that determination. Such a provision in a contract is valid and binding upon the parties. 32 C.J.S., *Contracts*, p. 724. Timmons did not approve the method of construction and would not have approved it in the manner it was built (T. 518), therefore the court finds that the manhole was not constructed

in a good, firm and workmanlike manner in accord with the terms of this contract.

Normally, utilities are put into a subdivision area only a sufficient time ahead of the building construction so that they will be ready at the time the homes are ready. This is usually done after the area is cleared and after the roads have been graded.

In this case, however, a sewer line was not needed at the time in West End Manor because the plaintiff Stern had not begun to develop houses in the area. The Plaintiff Ram had developed a number of houses in Huntington, an adjoining subdivision, and in order to get the sewage from those houses to the sewage treatment plant, Ram needed a line through the Stern property. Stern agreed to join in this contract with Ram which provided for the installation of the line. (The defendant argues that since Ram put on no evidence that it is not entitled to "any recognition at all." T. 658. Ram was one of the contracting parties and made payments to the defendant under the contract. The evidence is sufficient to show that it should not be stricken as a party plaintiff.)

When a sewer line is completed the county inspects the work, including the manholes, and gives a tentative approval if the structure is built in accordance with plans and specifications. Such approval was given here on August 23, 1961, (D-1). This is customarily the time the sewer contractor is entitled to most of his money because thereafter the roads must be constructed above the sewer line, curbs and gutters put in, water and gas lines installed, and roads graded and surfaced. After this work is done, the county comes back to make another inspection of the sewer lines. A list is furnished of what additional work is necessary to obtain final approval. It is the responsibility of the owner to have this work done and the sewer contractor usually performs this additional work. If the work should have been performed as a part of the original construction under the contract, and was not, or if it was performed improperly, no extra payment is made to the contractor. If additional work was done by the contractor which was not a part of the original construction under the contract, the contractor would receive extra compensation. Until all of the work required, in the opinion of the county, is completed,

a final inspection is not made and final approval is not given.

Following the notice of tentative approval, the defendant was paid for his work done to that time, such payment being completed on October 13, 1961, (T. 50). The defendant calls this a "final payment" and argues that it is *the* "final payment" called for under the contract the making of which waives any claim the plaintiffs may have. This subject of waiver will be discussed *infra*. The president of Ram refers to this last payment as "the final one on our contract dated July 21, 1961" (D-2). This reference is obviously to the last of the series of installment payments made of the contract price due upon tentative approval.

At the time of the October 1961 payment, no roads had been installed in the area of the manhole and it was working properly receiving and discharging sewage.

In the "late fall" of 1961, the area near manhole 34 was being cleared. No heavy equipment had been in the immediate area of the manhole. The "grubbing" of the ground reached to within 100 or 150 feet of it. It was then that the witness Allen walked over to the manhole and observed it to be "a little tilted."

Thereafter on Thursday, January 4, 1962, Allen, who was a contractor employed by the plaintiff Stern, broke into the manhole and worked in and around it on Friday January 5, Monday January 8, and Tuesday January 9. On Saturday January 6, the local weather bureau recorded 3.31 inches of total rainfall. Because of the wet condition of the area work was discontinued by Allen on January 9, 1962. This was the day that the witness Pace recorded in his notes that the manhole appeared leaning, a fact which he had not noticed before although the "contractor" (Allen) claimed it was "like that" when work was started on the previous Friday. The evidence fails to support the defendant's claim that the cause of the tilting and ultimate reconstruction was the result of Allen's work at the manhole during this period of time. It was leaning before Allen ever began his work. Furthermore, the Engineer Timmons testified that if the manhole had been constructed in accordance with his recommendations, the work done by Allen, and in particular the removal of the vertical

pieces of sheathing, would have had no effect on the manhole.

In June of 1962, the manhole was reconstructed, the job being completed on August 1 after twenty days of actual work.

The defendant claims that the payments made to him in 1961 culminating with the last installment in October constituted *the* final payment and thereby the plaintiffs waived any claims it had against him. In the opinion of the court there are several reasons why this position should not be sustained. First, under the court's interpretation of the contract taking into account the facts and circumstances surrounding the parties at the time they entered into it, the parties did not intend that the payment of the contract price upon completion of the initial construction and prior to a final inspection was the "final payment" which would bring about a waiver of claims. The payment made was expressly due upon tentative approval and was preliminary to a contemplated final payment made upon final inspection.

Second, to follow the defendant's reasoning that such payment was the final one, would render meaningless other provisions of the contract which dealt with subsequent inspections, extra work and approvals to be made by the Engineer and the county.

Third, even assuming that the payment could be construed as *the* final payment there can be no waiver here because the plaintiffs had no knowledge of the improper construction of the manhole at the time the payment was made. One can never be said to waive his rights unless he knows what they are at the time of the alleged waiver. *Kuhleman & Kayhoe v. Marks*, 168 Va. 81 (1937). See also *Iaege v. Bossieux*, 56 Va. (15 Gratt.) 83 (1859).

During the course of the trial, certain evidence was received over the objection of the defendant subject to a later ruling by the court on its admissibility. In order to complete the record the following decisions are now made: to the objection stated beginning on page 370, no ruling is necessary because objection was withdrawn on page 376; to the objection on page 513, it is sustained. There is no ambiguity in the use of the term "Engineer" in paragraph 3-A of the agreement. This term clearly

refers to "J. K. Timmons, Civil Engineer" in Paragraph 1-A of the agreement.

The plaintiffs are entitled to recover for the following items of loss: the bill of Allen (P-8), $3,351.50; the cost of the pipe used, $218.00 (T. 492) (the evidence shows that item to be $345.00, but $218.00 was claimed in the amendment to the amended motion for judgment); the cost of the pump use for 20 days at $10.00 per day, $200.00 (T. 493); the value of the time of Mr. Arenstein in the supervision of the reconstruction, $346.00 (T. 494); and, the value of the time of Mr. Liesfeld spent in connection with the reconstruction, $100.00 (T. 495). The claimed loss as the result of the delay as it related to the interest on the construction loan is disallowed, the evidence being too speculative and insufficient upon that item.